DANIEL F. SHIRK

*v.*

THE PEOPLE OF THE STATE OF ILLINOIS.

*Filed at Ottawa May 12, 1887.*

121  61
27a 253
121  61
148  318
121  61
154  289
121  61
161  268
121  61
83a 597
121  61
f185  204
121  61
97a ²159.

1.   CRIMINAL LAW—*making or passing fictitious bill, note, etc.—what character of instruments embraced therein—the statute construed.*   Section 107 of the Criminal Code, making it an offence to make, pass, utter or publish, with intent to defraud, any fictitious bill, note or check, purporting to be the bill, note, check, or other instrument in writing for the payment of money or property, of some individual, when no such individual is in existence, knowing the same to be fictitious, embraces only such instruments in writing as contain an absolute or unconditional promise to pay money or property to the person therein named.   It does not include contracts for the payment of money upon a sale of property upon its delivery at a certain time, or agreements to pay money upon a contingency that may never happen.

2.   CONSTRUCTION OF STATUTES—*of general words following an enumeration of particular cases.*   It is a well recognized rule in the construction of statutes, that if general words follow an enumeration of particular cases, such general words are held to apply only to cases of the same kind as those which are expressly mentioned.

3.   SAME—*the rule as applied to section 107 of the Criminal Code.*   So, under a statute making it criminal to make or pass a fictitious bill, note or check, or other instrument in writing, for the payment of money, etc., the words, "other instrument in writing," will only include such instruments as are of the same class or kind as those enumerated, such as money, bonds, due bills, and other instruments in writing containing an absolute, unconditional promise or obligation to pay a sum of money or personal property.

WRIT OF ERROR to the Circuit Court of Stephenson county; the Hon. WILLIAM BROWN, Judge, presiding.

Mr. J. A. CRAIN, for the plaintiff in error:

The phrase, "other instrument in writing," first occurs in the act of 1827, relating to negotiable paper, and our courts hold, that this statute, still in force, applies only to absolute and unconditional promises to pay money or deliver personal property. *Thompson* v. *Armstrong,* Breese, 39 ; *Canadian Bank* v. *McCrea,* 106 Ill. 289.

The enumeration or specification of certain things in an act, which belong to a class distinguished from another class within which nothing is mentioned, shows that the mind had in view things of the former class only; and then, if the draftsman adds, "all others," these words will be understood as referring to "other things" within the class. Bishop on Stat. Crimes, sec. 247.

Tested by this criterion, section 107 of the Criminal Code intends, and its legal effect is, to read, note, bill or check, or other instrument in writing for the like payment of money .or property. And the money or property must be payable absolutely and unconditionally.

Mr. GEORGE HUNT, Attorney General, and Mr. OSCAR E. HEARD, State's Attorney, for the People:

In Bishop on Stat. Crimes, sec. 247, that author says, there are cases to which the rule does not apply, and that "when it does not, in legal principle, and it is believed on the weight of authority, the general words should not be thus restrained." It will be presumed that every word in a statute was inserted for some purpose. *Bloom* v. *Richards,* 2 Ohio St. 402.

General words in a statute must receive a general construction, unless there is some ground for restraining them. *Beckford* v. *Wade,* 17 Ves. 91; *Bank* v. *Dalton,* 9 How. 522.

In a criminal case, the Supreme Court of Indiana construed the words, "other articles," in the statute for the protection of religious meetings, etc., (Acts 1859, p. 126, and Acts 1865, Sp. Sess., p. 201,) to mean, not merely articles specifically named in the statute, but all "other articles," although of a very different kind, grade or class from those mentioned specifically. *State* v. *Solomon,* 33 Ind. 450.

For additional authorities, by which we think our theory of the construction to be placed on the phrase, "or other instrument in writing," is upheld, we refer to *State* v. *Holman,*

3 McCord, 306; *Shropshire* v. *Glascock,* 4 Mo. 536; *Boynton* v. *Curle,* 4 id. 599; *Commonwealth* v. *Percavil,* 4 Leigh, 686; *Vicaro* v. *Commonwealth,* 5 Dana, 504; *United States* v. *Pearce,* 2 McLean, 14; *Calder* v. *Deleisseline,* Harper, 186; *Eubanks* v. *State,* 5 Mo. 450; *State* v. *Wilson,* Cheves, 163; *Rex* v. *Parker,* 1 Leach, 320; *Riley* v. *State,* 9 Humph. 646; *State* v. *Cooper,* 5 Day, 250; *Rex* v. *Blick,* 4 Car. & P. 377; *State* v. *Edmund,* 4 Dev. 340; *Commonwealth* v. *Wyatt,* 6 Rand. 694; *Regina* v. *Oldham,* 14 Eng. L. & Eq. 568; *State* v. *Mosely,* 14 Ala. 390; *Rex* v. *Coates,* 6 Car. & P. 394; *Jennings' case,* 2 Lewin, 130; *Elmsly's case,* 2 id. 126; *Crow* v. *State,* 6 Texas, 334; *Blemer* v. *People,* 76 Ill. 271; Bishop on Stat. Crimes, (ed. of 1873,) 70.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

At the December term, 1886, of the circuit court of Stephenson county, Daniel F. Shirk was tried and convicted of the crime of uttering and publishing an alleged fictitious instrument in writing, for the payment of money, his punishment being fixed at two years confinement in the penitentiary. By the present writ of error we are asked to review that conviction.

The indictment is founded on the 107th section of the Criminal Code, which, so far as it is supposed to have any application to this case, is as follows: "Whoever shall make, pass, utter or publish, with an intention to defraud any other person, any fictitious bill, note or check, purporting to be the bill, note or check, or other instrument of writing for the payment of money or property, of some * * * individual, when in fact there shall be no such * * * individual in existence, the said person, knowing the said bill, note, check, or instrument of writing for the payment of money or property, to be fictitious, shall be imprisoned in the penitentiary not less than one nor more than twenty years."

The count in the indictment upon which the defendant was convicted, charges, that on the 20th of July, 1885, in Stephenson county, in the State of Illinois, Daniel F. Shirk feloniously did utter, publish and pass, as true and genuine, a certain false and fictitious instrument of writing for the payment of money, to one Harvey F. Perkins, he being then and there the H. F. Perkins in the instrument mentioned, which instrument then and there purported to have been signed by one Morton Walldecker, when in fact there was no such individual in existence, said Shirk then and there knowing said instrument to be false and fictitious, with intent thereby then and there to defraud said Harvey F. Perkins, which instrument is of the following tenor:

"HARVEY F. PERKINS'
MARBLE AND GRANITE WORKS, LENA, ILL.
*Adline, July 17, '85.*

"I have this day bought of H. F. Perkins, marble grave-stone, of the following size: ..... feet, ..... inches long, by ..... inches wide, ..... inches thick, to be in style and finish of No. .... of his drawings or photographs. One ..... one marble monument of the following size: Limestone base, 1–0 × 2–2 × 2–2; marble base, 0–10 × 1–7 × 1–7; die, 2–2 × 1–2 × 1–2; 0–5 × 1–1½ × 1–1½; 0–1 × 1–6 × 1–6; plinth; column; cap; urn, 1–5 × v–9 × v–9; final, statuary, to be in style and finish of No. .... of his drawings or photographs, with the exception of ................. To be inscribed as follows: ......................................

"To be delivered and set in Foreston freight office, Ogle Co., Ill., on or about the 5th day of November, 1885, or as soon as convenient thereafter, for which I agree to pay the sum of $165 on delivery of said monument.

"Dated at Adline, this 17th day of July, 188 .

MORTON WALLDECKER.

"P. O. address: Adline, County of Ogle, State of Illinois."

The principal question presented for determination is, whether, assuming the instrument set out in the indictment to be fictitious, is it such a one as falls within the category of instruments contemplated by the section of the statute above cited. If it does not, of course the conviction can not be sustained, and it will therefore be unnecessary to consider other questions discussed in the briefs.

It is clear that the instrument is neither a bill, note, nor a check, according to either the popular or technical signification of those terms, and this is practically conceded by counsel for the State; but the contention is, that it is embraced within the general designation, "other instrument in writing." This phrase seems to have been first introduced into our statute relating to negotiable instruments, in 1827, and it has from that time till the present, been the settled construction of this court, that in that connection it extends only to such instruments in writing as contain an absolute or unconditional promise to pay money or property to the payee therein named, or his assignee. This construction is fully recognized and approved in the late case of *Canadian Bank* v. *McCrea et al.* 106 Ill. 281.

In the section upon which the indictment is founded, the enumeration is, "fictitious bills, notes, checks, or other instrument in writing." In the act relating to negotiable instruments, it is, "all promissory notes, bonds, due-bills, and other instruments in writing." Considering the expression, "other instrument in writing," as it occurs in the Criminal Code, is taken from the act on negotiable instruments, and that it follows, in both acts, a specific enumeration of the same kind or class of instruments, there is certainly much force in the claim that its construction should be the same in both acts. This conclusion is certainly much strengthened by the fact that it is in strict conformity with the well recognized rule of construction, that "if general words (as is the case here) follow an enumeration of particular cases, such general words

are held to apply only to cases of the same kind as those which are expressly mentioned." Potter's Dwarris, 247, 248; *In re Swigert*, 119 Ill. 83.

Applying this principle to the present case, it is very clear the expression, "or other instrument in writing," would only include such instruments as are of the same class or kind as those mentioned, which would include, money bonds, due-bills, and all other instruments in writing containing an absolute, unconditional promise or obligation to pay a sum of money or personal property. If this is not the test, where is the line to be drawn? It certainly could not have been intended to include all written contracts, which, if genuine, one or the other of the contracting parties would, upon certain contingencies, be required to pay money or property under,—such, for instance, as a contract for the purchase of a horse, to be paid for on delivery at a future day. The instrument or contract in question does not, in principle, differ from the case suggested. It is, in form, a contract in writing for the purchase by Walldecker, from Perkins, of a marble monument, to be delivered on a future day, and paid for on delivery. By the terms of the instrument it was wholly uncertain whether the money would ever become payable. That depended altogether upon whether the monument was put up and tendered at the time and place specified in the instrument. If the statute was intended to extend to a fictitious contract like this, then it would apply to every executory contract where either of the parties bound himself to the other, though upon a mere contingency, for the payment of money or personal property. This can not be a proper construction of the statute. If such was the intention of the legislature, the language used certainly fails to express it. Contracts like the one under consideration, are seldom, if ever, the subject of sale or transfer, like bills, notes, checks, etc., hence it was not thought necessary to protect society from the sale of fictitious contracts which impose a merely contingent obligation to pay money or property.

We are clearly of opinion that the indictment under which: the defendant was convicted is fatally defective, and that; the court therefore erred in overruling defendant's motion to quash it.

For the reasons stated, the judgment of the court below is reversed, and the cause remanded, with directions to quash the indictment and discharge the defendant.

*Judgment reversed.*