AMERICAN BRIDGE CO. OF NEW YORK v. CAMDEN INTERSTATE RY. CO.

(Circuit Court of Appeals, Fourth Circuit. November 15, 1904.)

No. 519.

1. DAMAGES—BREACH OF CONTRACT—RECOUPMENT FOR DELAY IN PERFORMANCE.
    Plaintiff, having contracted to build two bridges for defendant, failed to complete the same by the dates specified in the contract. The bridges were required to connect extensions of certain lines of electric railway owned by defendant, which were to be consolidated and operated as a single system, of which purpose plaintiff was advised. Defendant entered upon the construction of its extensions, which could have been completed by the time the last bridge was to be finished, but were not because it became apparent that the bridge would not then be ready. Held, that the measure of the damages defendant was entitled to recover for breach of the contract by way of recoupment against the contract price was the interest at the legal rate on the money expended

by it upon the improvements and extensions which were reasonably within the view of the parties when the contracts were made from the date when the last bridge should have been completed, or from the times thereafter when such expenditures were made to the date of its completion.

2. ERROR—REVIEW—ACTION TRIED TO COURT.

Where a jury is waived by stipulation in an action at law in a federal court, its findings of fact are conclusive in the appellate court, and only the questions of law applicable thereto can be considered.

In Error to the Circuit Court of the United States for the Southern District of West Virginia.

Henry C. Duncan, Jr., and John H. Holt (Campbell, Holt & Duncan, on the brief), for plaintiff in error.

W. R. Thompson (Vinson & Thompson, on the brief), for defendant in error.

Before GOFF, Circuit Judge, and MORRIS and PURNELL, District Judges.

GOFF, Circuit Judge. This writ of error was prosecuted from a judgment rendered by the Circuit Court of the United States for the Southern District of West Virginia in an action of assumpsit. The declaration contains the usual indebitatus assumpsit counts. The case is sufficiently stated by the facts as found by the court below. By stipulation in writing the parties waived a jury, and submitted all matters of law and fact involved in the issues to the court for its decision. The assignments of error relating to the action of the court below concerning the pleadings are without merit, and it will not be profitable to consider them here. In fact, they are not insisted upon by counsel for plaintiff in error. The facts found by the court below are as follows:

I find that the American Bridge Company, plaintiff, is the assignee of the Pittsburgh Bridge Company of a certain contract with the defendant dated May 26, 1900, for the erection of a bridge over Twelve Pole creek on or before August 1, 1900, for the sum of $4,000, and was also the assignee of the American Bridge Company of New Jersey of a certain contract with the defendant dated September 25, 1900, providing for the erection of a steel bridge over the Big Sandy river on or before January 1, 1901, for the sum of $24,500. Both of these contracts were made with the Ohio Valley Electric Railway Company, and said corporation afterwards changed its name to the Camden Interstate Railway Company, the present name of the defendant. I further find that the contract dated September 25, 1900, was signed by "J. N. Camden," but was made for and on behalf of the defendant corporation, and no question of authority to make such contract was raised at the trial.

I find from the evidence that the bridges over Twelve Pole creek and Big Sandy river were constructed in accordance with the plans and specifications set forth in the contracts therefor. I further find that the Twelve Pole Bridge was completed on or about March 1, 1901, and the Big Sandy Bridge on or about June 23, 1901, and that the cause of delay was not among those specified in the contract as excusing the contractor from liability for failure to complete said work at the time prescribed in its agreements.

I further find from the evidence that at and before the contract for the Big Sandy Bridge was entered into Mr. Broumbaugh, the agent of the American Bridge Company of New Jersey, assignor of the contract for said bridge to the plaintiff, was advised of the fact that it was the intention of the defendant to connect the Huntington, Ashland and Catlettsburg Street Rail

ways into a continuous system, and that it was the intention of the defendant to push their work on this construction, and that, in consequence, the contract for the erection of the Big Sandy Bridge would be a time contract. But I do not find from the evidence that Mr. Broumbaugh was advised of the fact that the Ironton Street Railway was to be a part of the contemplated connected system.

I find that one-half of the contract price of each bridge, to wit $2,000 on the Twelve Pole Bridge and $12,250 on the Big Sandy Bridge, was paid by the defendant when due, and that the balance upon each contract has not as yet been paid. I further find that the plaintiff did extra work on the Twelve Pole Bridge amounting to $1,175, for which it is entitled to be paid, with interest from November 1, 1900; and that it also furnished piles, etc., to the value of $127.95, to which it is entitled, with interest from August 1, 1901.

I further find that the plaintiff is entitled to recover the balance on the Twelve Pole Bridge, as aforesaid, of $2,000, with interest from March 1, 1901, and the balance on the Big Sandy Bridge of $12,250, with interest from June 23, 1901.

I find from the evidence that the set-off claimed by the defendant in its plea and statement of set-off, which amounts to $644.42, was not authorized to be expended and incurred by plaintiff or its agent, and the same cannot be allowed.

I find from the evidence that the defendant, the Camden Interstate Railway Company, expended for construction upon its lines and plants the following sums:

### Construction.

| | | |
|---|---|---:|
| Previous to January 1, 1901 | | $328,913 51 |
| During January | " | 29,169 39 |
| " February | " | 46,152 09 |
| " March | " | 37,086 05 |
| " April | " | 49,273 44 |
| " May | " | 44,530 78 |

—And I further find that by reason of the failure of the plaintiff to complete the Big Sandy Bridge at the time specified in the contract (i. e., January 1, 1901) the defendant was deprived of the use of the aforesaid sums of money, and that they are entitled to recoupment by way of interest at 6 per cent. from the several dates to June 23, 1901, the date of the completion of the said bridge, as per the following statement:

### Recoupment by Way of Interest.

| | |
|---|---:|
| Int. on $328,913.51 from Jan. 1 to June 23, 1901 | $ 9,483 57 |
| Int. on    29,169.39 from Feb. 1 to June 23, 1901 | 695 18 |
| Int. on    46,152.09 from Mch. 1 to June 23, 1901 | 884 60 |
| Int. on    37,086.05 from Apr. 1 to June 23, 1901 | 520 20 |
| Int. on    49,273.44 from May 1 to June 23, 1901 | 443 45 |
| Int. on    44,530.78 from Jun. 1 to June 23, 1901 | 170 68 |
| Total | $12,197 68 |

Summary: I therefore find that the plaintiff is entitled to recover of the defendant as follows:

| | |
|---|---:|
| $1,175.00, with interest from Nov. 1, 1900, to June 23, 1901... | $ 1,220 62 |
| $2,000 balance due on Twelve Pole Bridge, with interest from Mar. 1, 1901, to June 23, 1901 | 2,037 33 |
| $12,250, balance due on Big Sandy Bridge as of June 23, 1901.. | 12,250 00 |
| Total | $15,507 95 |

—And that the defendant is entitled to recoupment to the amount of $12,197.68, being interest at 6 per cent. upon amounts invested as shown in finding above. I therefore find that the plaintiff is entitled to recover of the defendant the sum of $3,310.27, balance due as of June 23, 1901, which, with interest from said June 23, 1901, to the date of this finding, April 10, 1903, amounts to $3,667.22, and the further sum of $127.95, the value of piles, etc.,

furnished defendants, with interest from August 1, 1901, to the date of this finding, April 10, 1903, amounting to $140.94.

I therefore find that the plaintiff is entitled to recover of the defendant the sum of $3,808.16, with interest thereon from this date, April 10, 1903, until paid, and its costs by it about its suit in this behalf expended, including an attorney's fee of $10, as allowed by law. An order may go in accordance with this finding.

Note.—There was evidence of a documentary character, introduced by the defendant on the trial of this case, tending to show the expenditure of certain sums of money upon Clyffeside Park, Ironton Street Railway, engineering, and for ferry franchises, as sums upon which interest, by way of recoupment, should be allowed; but I am unable to find from the evidence that these items are proper ones, or that they can be connected with the main investment so clearly as to be properly charged, and they were disregarded in my finding.

That the Camden Interstate Railway Company expended for construction upon its lines and plants previous to January 1, 1901, the following sums, to wit:

| | |
|---|---:|
| Upon its Huntington line................................... | $ 37,713 74 |
| Upon Kenova & Central City extension.................... | 130,429 62 |
| Upon Big Sandy Bridge.................................... | 34,667 62 |
| Upon Hampton City extension............................. | 25,600 68 |
| Upon Ashland & Catlettsburg Street Railway.............. | 25,396 71 |
| Upon equipment ...................…....................... | 15,702 88 |
| Upon power plant, substation and high transmission line.... | 60,402 26 |
| Total .......................................... | $328,913 51 |

These are the details of the items in my finding, marked previous to January 1, 1901, and aggregating $328,913.51.

During January, as follows:

| | |
|---|---:|
| Upon its Huntington line................................... | $ 3,266. 70 |
| Upon Kenova and Central City extension.................... | 5,998 89 |
| Upon Big Sandy Bridge.................................... | 93 53 |
| Upon Hampton City extension............................. | 2,072 55 |
| Upon Ashland & Catlettsburg Street Railway.............. | 455 02 |
| Upon equipment ......................................... | 3,052 66 |
| Upon power plant, substation and high transmission line..... | 14,230 04 |
| Total .......................................... | $29,169 39 |

These are the details of my January finding, aggregating $29,169.39.

During February, as follows:

| | |
|---|---:|
| Upon its Huntington line................................... | $ 2,855 72 |
| Upon Kenova & Central City extension.................... | 5,127 04 |
| Upon Big Sandy Bridge.................................... | 6,354 73 |
| Upon Hampton City extension............................. | 889 47 |
| Upon Ashland & Catlettsburg Street Railway................ | 9,111 86 |
| Upon equipment ......................................... | 267 00 |
| Upon power plant, substation and H. T. line.................. | 21,546 27 |
| Total........................................ | $46,152 09 |

These are the details of my February finding, aggregating $46,152.09.

During March, as follows:

| | |
|---|---:|
| Upon Huntington line..................................... | $ 397 10 |
| Upon Kenova & Central City extension...................... | 5,058 59 |
| Upon Big Sandy Bridge.................................... | 10,718 67 |
| Upon Hampton City extension............................. | 602 70 |
| Upon Ashland & Catlettsburg Street Railway................ | 933 02 |
| Upon equipment ......................................... | 8,052 00 |
| Upon power plant, substation and H. T. line................. | 11,323 97 |
| Total......................................... | $37,086 05 |

These are the details of my March finding, aggregating $37,086.05.

During April, as follows:

| | | |
|---|---|---|
| Upon Huntington line................................ | $ 1,292 | 75 |
| Upon Kenova & Central City extension................ | 9,415 | 13 |
| Upon Big Sandy Bridge................................ | 12,968 | 03 |
| Upon Hampton City extension......................... | 42 | 02 |
| Upon Ashland & Catlettsburg Street Railway.......... | 1,396 | 00 |
| Upon equipment ..................................... | 6,592 | 64 |
| Upon power plant, substation and H. T. line......... | 17,566 | 87 |
| | | |
| Total ............................................. | $49,273 | 44 |

These are the details of my April finding, aggregating $49,273.44.

During May, as follows:

| | | |
|---|---|---|
| Upon Huntington line ............................... | $ 1,904 | .97 |
| Upon Kenova & Central City extension................ | 8,958 | 30 |
| Upon Big Sandy Bridge............................... | 1,395 | 95 |
| Upon Hampton City extension......................... | 65 | 07 |
| Upon Ashland & Catlettsburg Street Railway.......... | 345 | 84 |
| Upon equipment ..................................... | 8,813 | 60 |
| Upon power plant, substation and H. T. line......... | 23,047 | 05 |
| | | |
| Total ............................................. | $44,530 | 78 |

These are the details of my May finding, aggregating $44,530.78.

I find that at the time the contract was made for the construction and erection of the bridge across the Big Sandy river for the Ohio Valley Electric Railway Company, now the Camden Interstate Railway Company, and previous thereto, the said railway company owned and operated the following lines of street railway:

(a) A line extending from Guyandotte, West Virginia, a town having a population of from two to three thousand persons, west along third avenue, in Huntington, to Seventh street therein, a distance of three miles and a fraction; also a line extending from the corner of Tenth street and Third avenue, in the city of Huntington, south and east to the Chesapeake & Ohio shops, in the eastern part of said city, a distance of two and one-fourth miles; and a line extending from Ninth street, in Huntington, west along Fourth avenue to Central City, a town having four thousand population, a distance of two and three-fourths miles; and that the city of Huntington had at the time a population of twelve thousand persons.

(b) Also that said company owned and operated a line of railway extending from Division street, Catlettsburg, a town having a population of between thirty-five hundred and four thousand people, to Ashland, a city having a population of seven or eight thousand persons, a distance of six miles.

(c) Also a line of railway extending from Coal Grove, Ohio, a town immediately opposite Ashland, Kentucky, west through the city of Ironton, with a population of eleven or twelve thousand, to Hanging Rock, Ohio, a distance of seven miles.

And I further find that at the time of the making of the contract for the construction of said bridge, and for a long time previous thereto, and during the construction of said bridge, the said railway company had been operating the said several lines above mentioned for the carrying of passengers thereon for hire and reward.

The opinion of the court below, filed in and made a part of the record of this cause, reads as follows:

In this case the only question as to which there is a serious dispute between the parties is as to the proper measure of damages to be recovered by the defendant by way of recoupment on account of the delay of plaintiff in completing the two bridges mentioned in the pleadings, and particularly the bridge crossing Big Sandy river. I deem it unnecessary to make any statement of the case, as in my written findings, which are a part of the record, the main facts are fully stated. The eminent counsel on both sides of this case have submitted full and ably printed briefs, presenting most

admirably the opposite sides of the question here involved; and if I do not refer in extenso in this opinion to those briefs it is simply because the leading principle, as applied to the facts in this case, in my judgment, renders such analysis of the briefs unnecessary. There was no denial upon the part of the plaintiff that the defendant is entitled to recoup some damages growing out of its failure to complete these bridges within the time agreed upon, and the only question was, in what manner shall these damages be ascertained, and what is the proper amount? Recoupment is said in the law dictionaries to be the right of the defendant in the same action to claim damages from the plaintiff, either because he has not complied with some obligation of the contract upon which he sues, or because he has violated some duty which the law imposed upon him in making or performance of the contract. Bouv. L. Dict.; And. L. Dict. In Sutherland on Damages (2d Ed.) § 168, p. 329, it is said: "The defense which is allowed under the name of recoupment is not a keeping back a part of the plaintiff's prima facie damage on the case he seeks to establish by evidence of the character explained under the title 'mitigation of damages,' but a reduction of the plaintiff's recovery by the allowance against him in his action of damages due the defendant on a substantive cause of action in his favor, growing out of the same transaction on which the plaintiff's claim or demand arises." The same author, in section 81, p. 169, says: "Such losses may consist of expenditures made by one party to a contract and damages from his own acts done on the faith of its being performed by the other, in furtherance of the object for which the contract purports to be made, or the object which was in contemplation of the parties at the time of contracting;" citing Dean v. White, 5 Iowa, 266; Grand Tower Co. v. Phillips, 23 Wall. 471, 23 L. Ed. 71, etc. In Hadley v. Baxendale, 9 Exch. 353, the leading English case, two propositions on the scope of recovery of damages for breach of contract were established. They were thus stated by Baron Alderson: "Where two parties have made a contract, which one of them has broken, the damage which the other ought to receive in respect to such breach of contract should be such as may fairly and reasonably be considered either as arising naturally—that is, according to the usual course of things—from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." Where the special circumstances are known to the defendant, and where the damage is the natural result of his default, the special damage is held to have been in view of the parties to the contract, and is not too remote. 5 Am. and Eng. Ency. of Law (1st Ed.) p. 15; Hadley v. Baxendale, 9 Exch. 341. In Hammer v. Schoenfelder, 47 Wis. 455, 2 N. W. 1129, the plaintiff was a butcher, and the defendant had agreed to furnish him with such quantity of ice as he might need for his ice box to keep fresh meat during the summer. The defendant had supplied the plaintiff before, and understood the use of the ice. At the last of July the defendant ceased to furnish ice, and in consequence a quantity of meat was spoiled, as no ice could be procured elsewhere. The defendant was held liable for the value of the spoiled meat. The circumstances made known at the making of the contract, and its intrinsic nature, must be considered in estimating the damages. Winne v. Kelley, 34 Iowa, 339; Van Arsdale v. Rundell, 82 Ill. 63; Rogers v. Bemus, 69 Pa. 432; Hexter v. Knox, 63 N. Y. 561; Wolcott v. Mount, 36 N. J. Law, 262, 13 Am. Rep. 438. For cases in which recoupment of damages was allowed for failure to perform construction contracts within stipulated time, see Front St., etc., R. Co. v. Butler, 50 Cal. 574; Korf v. Lull, 70 Ill. 420; Cooke v. Preble, 80 Ill. 381; Havana, etc., R. Co. v. Walsh, 85 Ill. 58; Abbott v. Gatch, 13 Md. 314, 71 Am. Dec. 635; Rockwell v. Daniels, 4 Wis. 432. In Blanchard v. Ely, 21 Wend. 342, 34 Am. Dec. 250, it was held that, where the defense for the price of a steamboat was that part of the machinery was unsound and imperfect, occasioning considerable delay, the defendants could not recoup as damages the loss of the probable profits upon trips that might have been run during the time the vessel was delayed on account of the imperfections in its construction. In Smeed v. Ford (1859) 28 L. J. Q. B., 178, the defendants contracted to supply a threshing machine to the

plaintiff within three weeks from the 24th of July. The defendants, at the time of the contract, knew that the plaintiff was in the habit of threshing the corn in the field and sending it to market at once. The machine was not forthcoming in time, and the plaintiff was obliged to carry away and stack the corn. The corn was damaged by exposure to the weather, so that it was necessary to dry it in a kiln. The quality was much deteriorated, and before the corn could be sold the price had fallen. It was held, applying the rule in Hadley v. Baxendale, that the plaintiff was entitled to recover damages (1) in respect of the deterioration in the quality of the wheat, (2) in respect of the expense of carrying and stacking it, and (3) in respect of the expense of kiln-drying, but not in respect of the fall in prices. Where a landlord agreed in a case to repair the fences so as to secure a crop, and, failing to do so, cattle broke in and injured the crops, he was held for their value. Culver v. Hill, 68 Ala. 66, 44 Am. Rep. 134. On a breach of contract to sell and deliver furniture for a hotel by a fixed time, the loss of profits from renting the rooms to guests may be considered in the recovery. Berkey, etc., Co. v. Hascall, 123 Ind. 502, 24 N. E. 336, 8 L. R. A. 65. "A party is liable for all the direct damages which both parties to the contract would have contemplated as following from its breach, if at the time they entered into it they had bestowed proper attention upon the subject, and had been fully informed of the facts." Leonard v. N. Y., etc., Tel. Co., 41 N. Y. 544, 1 Am. Rep. 446. In Fletcher v. Tayleur (1855) 17 C. B. 21, 25 L. J. C. P. 65, the action was for damages for nondelivery of a ship at the stipulated time. The rate of freight was high then, and had fallen when the ship was delivered. It was held that the plaintiff could recover the difference in amount between what he would have earned had the ship been delivered at the proper time, and what he would earn at the lower rate. In Hydraulic Engineering Company v. McHaffie (1879) 4 Q. B. D. 670, 27 W. R. 221, the plaintiffs in July, 1877, contracted with J. to make for him a machine, to be delivered at the end of August. The defendants contracted with the plaintiffs to make "as soon as possible part of the machine called a gun." The defendants were aware that the machine was wanted by J. at the end of August, but they did not finish their part till the latter end of September. J. then refused to accept the machine from the plaintiffs. It was held that the defendants had broken their contract, and were liable to pay as damages the loss of profits of the plaintiffs upon their contract with J., as well as the amount spent by them uselessly in making other parts of the machine. In Elbinger Action-Gesellschaft, etc., v. Armstrong (1874) 9 Q. B. 473, 43 L. J. Q. B. 211, 30 L. T. 871, 23 W. R. 127, the defendant, in January, 1872, agreed to furnish the plaintiff with a quantity of sets of wheels and axles, according to tracings, to be delivered on certain specified days, free on board at Hull. The plaintiffs were under a contract with a Russian railway company to deliver them 1,000 covered wagons, 500 on the 1st of May, 1872, and 500 on the first day of May, 1873, under a penalty of two roubles per wagon for each day's delay in delivery. In the course of the negotiations between the plaintiff and the defendant, the latter was informed of the plaintiff's contract with the railway company. The defendant failed to complete, and the plaintiffs had to pay a penalty of one rouble a day, amounting to about 100 pounds. It was held that the jury might reasonably assess the damages at the amount actually paid by the plaintiff.

The defendant in this case presented three propositions as to the correct measure of damages. First. The proposition that it was entitled to recover the profits it would have made from its investment had the bridges been completed in time; and it undertook to show what these profits would have been by comparing the profits made during a corresponding period in the next year (1902) with the same period in the year prior to the commencement of the work (1900). I ruled out the evidence on the ground that it was purely speculative, especially so as there was no way in which the increased profit properly attributable to the extension of the railway system, and growing out of the connections made by means of the bridges and links added, could with any degree of certainty be separated from the in-

crease of profits properly attributable to the operation of the old lines separately. This is not such a case as would have been made had this whole line been in operation, and the bridges in question been swept away or burned, and rebuilt by the plaintiff under a time contract, for in such a case the loss of profits might, with reasonable certainty, have been ascertained. And yet, in a case cited by both parties and decided by the Supreme Court of the United States, viz., Howard v. Stillwell Manufacturing Co., 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147, it was held that: "Where a mill which is contracted to be constructed is not completed at the date specified in the contract, anticipated profits of the mill owner from grinding wheat into flour and selling the same, which he would have made had the mill been completed at the time agreed, cannot be recovered as damages for delay in completing the mill." (2d point of syllabus.) The foregoing case was, in my opinion, a stronger one for the allowance of profits as a measure of damages than is the present. In that case the contract was for the reconstruction of an existing mill with an established trade into a mill of the roller process type, with capacity of two hundred barrels per day. Defendants offered to prove by way of recoupment that they had good wheat on hand, out of which they could have made a profit of $1 per barrel, or $200 per day, for each day they were delayed, but the court said, after citing Hadley v. Baxendale, 9 Exch. 341; Pennypacker v. Jones, 106 Pa. 237, 242; Callaway Min. & Mfg. Co. v. Clark, 32 Mo. 305; Blanchard v. Ely, 21 Wend. 342, 34 Am. Dec. 250; and a number of other cases: "The principles announced by the above-cited authorities lead to the conclusion that the court did not err in striking out that part of defendant's plea which sought to recover $12,000 as the profits expected to be derived from the sale of the flour which they would have manufactured, and in excluding the evidence offered in support of the claim therein set up. Tested by them, such losses were, in our opinion, rather remote and speculative than direct and immediate, resulting from the breach alleged." In the present case the reasons for disallowing the character of evidence tendered in support of the offer to prove loss of profits are, in my opinion, stronger than in the case of Howard v. Stillwell Manufacturing Co., just cited.

The next proposition of the defendant was to prove the rental value of the structures for the time their construction was delayed; but, it appearing that the witness or witnesses called for this purpose proposed to testify as to such rental value from a calculation of the profits alleged to have been lost, this evidence was excluded, and the defendant then presented its third proposition, namely, that it was entitled to offset by way of recoupment interest on such sums of money as it had expended directly in connection with the building of these bridges (and which would not have been expended but for the consolidation of the lines of the defendant) from January 1, 1901 (when the last bridge should have been completed), or from such date thereafter as any such sum of money was actually expended, to June 23, 1901, the date when the last and more important bridge was actually completed. In connection with this offer, the defendant offered evidence to prove that Mr. Broumbaugh, the agent of the plaintiff's assignor at the time when the contract for the Big Sandy Bridge was entered into, was taken over the line from Huntington to Ashland, and was shown what connections were contemplated, and the reasons why the contract must be a time contract, were explained to him. The defendant also offered evidence tending to prove that all the work to be done by defendant could have been done by January 1, 1901, the date for the completion of the Big Sandy Bridge, but that after it became apparent that the bridge would not be completed by that time the contractors were allowed to go more slowly, as the necessity for hurry did not exist; and that the only reason that all of the work was not completed by January 1, 1901, was that it had become apparent that the bridge could not be finished by that time. Mr. Magoon, one of the witnesses for the defendant, presented and proved a schedule of the various sums of money expended on account of the improvements and constructions of connecting links, etc., of the several lines of street railway owned by the defendant. It is ingeniously argued by the able counsel

for plaintiff that interest upon the total investment upon a work of magnitude can never be the proper measure of damages whereby to charge a contractor for one unimportant link, for his delay in fulfilling his contract, and instances the case where a contractor has a time contract for a $5,000 trestle upon a new railroad involving the total expenditure of $70,000,000, claiming that it would be monstrous to attempt to collect interest on the total $70,000,000 for the failure of the petty contractor to complete his $5,000 contract on time. They base this contention upon the idea advanced in Mayne on Damages and other text-writers to the effect that the measure of damages for the breach of a contract must bear some relation to the reward the contractor would have been entitled to had he completed his contract to the letter. But counsel seem to misconceive the purpose of the defendant in this case. It is not to recover of the plaintiff a vast sum of money by an action against the contractor, but to recoup its damages from the contractor within the limit of the reward promised to the contractor for full and faithful performance of his contract. While it may be, and doubtless is, true that in the case instanced by plaintiff's counsel the railroad could not recover interest on its idle and useless $70,000,000 (made idle by reason of the delay in the $5,000 contract), to an amount in excess of $5,000, yet can it be said that it might not recoup against the delinquent contractor damages to the extent of the emolument promised to the contractor for prompt and faithful performance, especially where the contractor was advised of all the circumstances?

I have concluded that the proper measure of damages in this case is interest at the legal rate upon such moneys as were spent by the defendant upon improvements and extensions reasonably within the view of the parties at the time the contract was entered into for the Big Sandy Bridge from January 1, 1901, or such time thereafter as such sums were expended, to June 23, 1901, the date of completion of said bridge. Having so concluded, the only remaining difficulty is in ascertaining what items in the schedule furnished by the witness Magoon are properly to be included, and what are not. In arriving at my conclusions in that respect I have taken into consideration that there is no evidence before me that plaintiff's agent was at all apprised that any improvements were contemplated at Clyffeside Park, or even that the park belonged to the defendant company, and that there is no evidence to support the idea that he knew of the ownership of the Ironton Line or its proposed connection with the other lines by means of a ferry across the Ohio river. I have therefore excluded interest upon these items from the account, and because there is no way for me to determine what proportion of the engineering charges embraced in Mr. Magoon's statement is applicable to the work in Ironton, Clyffeside, and the ferry, I have also excluded interest upon that item of expenditure. As to all the other items, I regard them as reasonably within the contemplation of the parties at the time.

The judgment of the court below was in favor of the plaintiff against the defendant for the sum of $3,808.16, with interest from the 10th day of April, 1903, until paid, together with the cost of suit. From this judgment the writ of error now before us was sued out. The jury having been waived, and the case having been tried by the court, its findings upon questions of fact are conclusive in this court, and therefore we have only now to consider the questions of law applicable to such facts. Stanley v. Supervisors of Albany, 121 U. S. 535, 547, 7 Sup. Ct. 1234, 30 L. Ed. 1000; Hathaway v. First National Bank of Cambridge, 134 U. S. 494, 498, 10 Sup. Ct. 608, 33 L. Ed. 1004; St. Louis v. Rutz, 138 U. S. 226, 241, 11 Sup. Ct. 337, 34 L. Ed. 941; Runkle v. Burnham, 153 U. S. 216, 235, 14 Sup. Ct. 837, 38 L. Ed. 694; Dooley v. Pease, 180 U. S. 126, 21 Sup. Ct. 329, 45 L. Ed. 457.

Judge Keller's opinion, herein quoted, is clear, able, and exhaustive of the points involved. In the judgment of this court the law applicable to said facts was correctly stated by him.

There is no error in the judgment complained of, and the same is affirmed.