### SANFORD COAL CO. v. WISCONSIN BRIDGE & IRON CO.

(Circuit Court of Appeals, Seventh Circuit.   July 18, 1923.)

No. 3256.

1. Interest ⟐15—Building contract held "instrument of writing" within Illinois interest statute.

A building contract, which provides for a money consideration, is an "instrument of writing," within Hurd's Rev. St. Ill. 1921, c. 74, § 2, providing that a creditor may recover interest on "all moneys after they become due on any bond,  *  *  *  or other instrument of writing."

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Instrument (a Writing).]

2. Damages ⟐40(2)—Lost profits held not recoverable as damages for delay in completion of a coal mine tipple.

Lost profits in the operation of a coal mine *held* not provable as a measure of damages for failure to complete a tipple within the time stipulated in the contract.

---

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Damages** ⬳189—**Delay in completion of a building contract.**

    Evidence *held* not to establish any measure of damages recoverable for failure of a contractor to complete a coal mine tipple within the time required by the contract.

In Error to the District Court of the United States for the Eastern District of Illinois.

Action at law by the Wisconsin Bridge & Iron Company against the Sanford Coal Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Bruce A. Campbell, of East St. Louis, Ill., for plaintiff in error.

John D. Black, of Chicago, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. This appeal is to reverse a judgment on a directed verdict for the plaintiff (defendant in error) in a suit on a written contract for the price of a tipple and other mine equipment, furnished to and accepted by defendant (plaintiff in error) as in all respects according to contract, except that there was a breach as to the time of performance. Two questions are presented here.

[1] 1. Is a building contract, which provides for the payment of a money consideration, an "instrument of writing," within the meaning of section 2, chapter 74, "Interest," of the Illinois statutes (Hurd's Rev. St. 1921) viz.:

"Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing."

This question has been many times and conclusively answered in the affirmative by the Illinois courts. Heiman v. Schroeder, 74 Ill. 158; Concord Apt. House Co. v. O'Brien, 228 Ill. 360, 81 N. E. 1038; Wells Lumber Co. v. Dunfee, 189 Ill. App. 91; Auto Light & Mfg. Co. v. 35% Auto. Supply Co., 189 Ill. App. 543; Keeler v. Herr, 54 Ill. App. 468. By this construction, no violence is done to the rule of ejusdem generis. Shirk v. People, 121 Ill. 61, 11 N. E. 888, cited by plaintiff in error, construed a section of the Criminal Code, reading in part as follows:

"Fictitious bills, notes, checks or other instruments in writing."

That language, the court said, was taken from the Negotiable Instruments Act, which reads:

"All promissory notes, bonds, due bills or other instruments in writing."

The court held that the words "or other instrument in writing" include such instruments only as are of the same class or kind as those specifically mentioned, and would include money bonds, due bills, and all other instruments in writing containing an unconditional obligation to pay a sum of money or personal property. The interest statute is quite different. Whether it includes "money bonds" is not here material, but it does include penal bonds, and money due under such bonds bears interest. Holmes v. Standard Oil Co., 183 Ill. 70, 55 N. E. 647;

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 381, 37 Sup. Ct. 614, 61 L. Ed. 1206. Inasmuch as a promissory note is an unconditional obligation, and a penal bond is a conditional obligation, it is evident that they do not, at the time they are executed, belong to the same class, so far as the obligation to pay is concerned. A penal bond is an instrument under seal; a promissory note is not; but they are in the same class, in that they are both absolute obligations to pay money after the money for which payment is provided in the several instruments mentioned in the act becomes due. The Illinois courts have uniformly held that money due upon penal bonds, after default, upon bills and promissory notes, upon building contracts and many other kinds of contracts providing for the payment of money, bear interest.

2. The second question is: Did the court err in holding that, under the circumstances, there was no measure of damage?

In November, 1919, the parties made a contract in writing, whereby plaintiff agreed to furnish, installed at defendant's coal mine by about July 1, 1920, a tipple and other equipment. There was no agreement as to damages for failure to perform. For some unexplained reason, the tipple was not finished until late in October, 1920, but was used from the 5th of that month. In September, 1918, defendant, then recently organized, started to sink its shafts. It reached the coal and was ready to open entries July 2, 1919.

The extent of the property owned or leased, or the terms and conditions by which defendant held it, nowhere appears. Until replaced by the new tipple, defendant used a temporary wooden tipple, with a proved daily capacity of 274 tons, working two eight-hour shifts. The mine's capacity, when the contract was made, was 150 tons, and in July, 1920, it was 250 tons per day.

To show plaintiff's knowledge of the damage that would accrue by failure to install the tipple as agreed, Mitchell, defendant's mining engineer and manager, testified to several conversations with plaintiff's representative Brooks prior to making the contract in question, viz.:

"I advised Mr. Brooks we were sinking a coal mine and we needed a new tipple at a certain time. * * * I told Mr. Brooks that our shafts had been completed to a point where it was necessary for us to have a tipple to increase our production. * * * I told Mr. Brooks that our capacity at that time was a maximum of 250 tons per day. * * * I said that the capacity of the mine would be approximately 4,000 tons when completed. * * * February 9, 1920, I told Mr. Brooks that we were very anxious that the work should progress as rapidly as possible."

Defendant offered to prove that, with the new tipple installed on July 1, 1920, there could thereafter have been mined 750 tons of mine run coal each day until November 1, 1920, and then offered to prove that 6,188 tons could have been mined during July, 1920, and that because of the insufficiency of the temporary tipple only 3,607 tons was mined. It offered to show that, the mine being in process of development, only 250 tons per day was mined during July, with no profit, and that a much larger amount could have been mined with the same overhead cost. Many other offers were made of evidence tending to show the cost of various mining operations for the purpose of establishing lost profits. There was an offer to show that in August,

293 F.—47

1920, with the temporary tipple, they actually mined 5,047 tons, and that 9,527 tons could have been produced, had the new tipple been established, and that in September defendant mined 5,459 tons, and in October 6,188 tons. The tipple was fully effective for and was in use from October 5th.

[2] As another measure of damages, defendant offered to show that the fair and reasonable value of the use of defendant's mining property without the new tipple in July, August, September, and October was $10 per day, and with it during the same months the value of the use was $200 per day, and also that the fair cash market value of the property of defendant at Paulton during the same months was $500,000. The court ruled that, under the circumstances shown in the record, there was no basis or measure of damages that could be recovered.

This court, on appeal, approved the opinion of the District Judge in Pusey & Jones Co. v. Combined Locks Paper Co., reported in 255 Fed. 700. There the facts were stronger for the defendant than here, and in view of that case it would serve no good purpose to discuss "lost profits" as a basis or measure of damages.

[3] Defendant urges that the cases of Wood v. Joliet Gaslight Co., 111 Fed. 463, 49 C. C. A. 427 (7th C. C. A.), American Bridge Co. v. Camden Interstate Ry. Co., 135 Fed. 323, 68 C. C. A. 131, and Cincinnati, etc., Traction Co. v. American Bridge Co., 202 Fed. 184, 120 C. C. A. 398, recognize a measure of damages that the trial court should have applied in this case. Those cases show no more than that interest, as damages, is allowable on the value of property of which one has been wrongfully deprived of the use. The Joliet Gaslight Co. Case in this circuit was bottomed on the case of N. Y. & Col. Mining Syndicate & Co. v. Fraser, 130 U. S. 611, 9 Sup. Ct. 665, 32 L. Ed. 1031, wherein the court allowed as damages interest on the cost of the mill during delay beyond agreed time of installation. In the Fraser Case there was an attempt to show:

"What was the fair rental value per month of this mill and its attachments?"

Without passing upon the question as to whether the offered evidence would have shown any proper measure of damages, the court's discussion of the qualification of the witness Sabin is very pertinent, when applied to the witness Mitchell in this case, by whom defendant offered to show the value per day of the use, not of the tipple, but of the whole of defendant's mining property. Sabin knew nothing of the rental value of a silver mill. Mitchell, so far as the record shows, and he was offered upon the qualification shown in the record, had no knowledge of the rental value of tipples, nor of the rental value of coal mines. If the tipple had been paid for in whole or in part, interest might, under proper circumstances, have been allowed on the part paid, as in the Joliet Case, supra; but nothing was paid on the tipple. Mitchell could not have figured the value of the use of the mine, except from the basis of estimated profits, or from an interest rate on the total value of the mining property, which defendant offered to show was $500,000.

It cannot be presumed that it was within the contemplation of the parties, when the contract was made, that plaintiff, in case of default, should pay either the rental or use value of the whole of a mining property, or the interest thereon, that evidently, from the character of the equipment, was only to be worked out through the course of many years. While defendant might properly have been permitted, had it offered to do so, to show the value of so much of its land as was actually occupied by the tipple during the time of the default, and might have been allowed interest thereon as a proper measure of damages, yet there was no such offer. The statement of the court, that under the circumstances shown in the record there was no measure of damages, was evidently intended and understood to mean all the facts, including the evidence, and we find no error therein.

The judgment is affirmed.