THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
EDWARD M. STEVENS, JR., Defendant-Appellant.

Fourth District No. 4—84—0061

Opinion filed November 13, 1984.

Daniel D. Yuhas and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, for appellant.

Ronald C. Dozier, State's Attorney, of Bloomington (Robert J. Biderman and Linda Welge, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

The defendant, Edward M. Stevens, Jr., was tried by a jury, convicted of two counts of forgery, and sentenced to concurrent terms of five years' imprisonment. On appeal he argues that his convictions must be reversed because of a fatal variance between the allegations in the charging instruments and the evidence adduced at trial. We af-

firm.

The defendant was charged first by information and then by indictment with the offenses here. Both counts of the indictment alleged that the defendant committed forgery "in that he knowingly with intent to defraud possessed with intent to issue a check ***." The checks in question were for $75 each and were refunds of security deposits that a landlord had mailed on June 3, 1983, to two former tenants, Carl Jessen and Frank Luto. Neither Jessen nor Luto ever received his refund check. On June 8 the defendant gave Jessen's check, bearing a blank endorsement in Jessen's name, to a friend, Robin Powell, explaining that Jessen owed him money. At the defendant's request, Powell endorsed the check and cashed it at her bank; she deposited $10, which the defendant owed her, and gave him the remaining money. A few days later the defendant gave Luto's check, bearing a blank endorsement in Luto's name, to a friend, Jerald Lott. At the defendant's request, Lott endorsed the check and cashed it at his bank, giving the defendant the full amount. The defendant's name did not appear on either check.

Section 17—3(a) of the Criminal Code of 1961 provides:

"A person commits forgery when, with intent to defraud, he knowingly:

(1) Makes or alters any document apparently capable of defrauding another in such manner that it purports to have been made by another or at another time, or with different provisions, or by authority of one who did not give such authority; or

(2) Issues or delivers such document knowing it to have been thus made or altered; or

(3) Possesses, with intent to issue or deliver, any such document knowing it to have been thus made or altered." (Ill. Rev. Stat. 1981, ch. 38, par. 17—3(a).)

The charges here alleged the defendant's possession of the checks with the intent to issue them.

■ On appeal the defendant argues that delivering a check is sometimes different from issuing one, and that the evidence adduced at trial showed his intent to deliver the checks rather than his intent to issue them. In making this argument the defendant relies on the definition of "issue" found in the Uniform Commercial Code, which said, " 'Issue' means the first delivery of an instrument to a holder or a remitter." (Ill. Rev. Stat. 1981, ch. 26, par. 3—102(1)(a).) "Delivery" is a "voluntary transfer of possession." (Ill. Rev. Stat. 1981, ch. 26, par. 1—201(14).) The defendant argues that, in giving these checks to

friends, he was not making first deliveries and therefore he could not have issued them or had the intent to issue them. The defendant made the same argument in the trial court in his motions for directed verdicts. The trial judge denied the motions; he believed that the defendant's endorsing the checks with the payees' names would be acts of issuance. The court seemed to believe that issuance was different from delivery, however, for he refused the State's issues instructions, taken verbatim from the applicable parts of Illinois Pattern Jury Instructions (IPI), Criminal, No. 13.26 (2d ed. 1981), and gave instead ones proposed by the defendant. The defendant's instructions differed from IPI Criminal No. 13.26 only in omitting the words "or deliver" from the statement, "That the defendant knowingly possessed, with intent to issue or deliver ***."

We do not believe that the word "issue," as it appears in combination with "deliver" in section 17–3, is limited to a first delivery, and therefore we decline to apply here the definition of "issue" contained in the Uniform Commercial Code. "Issue" is used in the Uniform Commercial Code as a term of art and carries with it a carefully circumscribed meaning. Under those provisions, "issue" is a first delivery of a negotiable instrument to a holder or remitter. Applying the commercial definition to the word "issue" as it appears in the forgery statute, however, would correspondingly limit prosecutions based on that act to first deliveries of negotiable instruments to holders or remitters. This would be inconsistent with the broad language of the forgery statute, which speaks of "any document"—not just a negotiable instrument—"apparently capable of defrauding another"—not just a holder or remitter. Cf. *Shirk v. People* (1887), 121 Ill. 61, 11 N.E. 888 (indictment quashed and defendant discharged because allegedly forged contract was outside the class of instruments enumerated in the statute forming the basis for the indictment).

Precedent exists for our decision here not to apply to the forgery statute a definition taken from commercial law. In *People v. Epping* (1959), 17 Ill. 2d 557, 162 N.E.2d 366, the court considered the argument that typing the payee's name on the back of a warrant could not constitute a forged endorsement, for the commercial law at that time required that endorsements be handwritten. The court said:

> "The definition of 'forgery' as contained in our statute does not limit the crime of forgery to an act of endorsing, by forgery, a signature on an instrument in compliance with the Negotiable Instruments Act. [Citations.] The test of an endorsement in a forgery trial is not its legal sufficiency to constitute a valid endorsement under the Negotiable Instruments Act but, rather,

the inquiry is to ascertain whether the endorsement renders the instrument capable of defrauding and is made for that purpose." (17 Ill. 2d 557, 568-69, 162 N.E.2d 366, 373.) In *Epping,* then, the court did not limit "endorsement" to its commercial meaning. See *People v. Connell* (1980), 91 Ill. App. 3d 326, 414 N.E.2d 796, and *People v. Addison* (1966), 75 Ill. App. 2d 358, 220 N.E.2d 511 (the term "make," as used in the forgery statute, includes endorsement).

■ Since *Epping* was decided, the various statutes dealing with forgery have been codified by section 17—3 of the Criminal Code of 1961; the drafters did not intend to change the law, however. (Ill. Ann. Stat., ch. 38, par. 17—3, Committee Comments, at 280-81 (Smith-Hurd 1977).) Thus, section 17—3 uses two pairs of general terms—"makes or alters" and "issues or delivers"—in place of the virtual thesaurus formerly spread over six separate statutes. (Ill. Rev. Stat. 1961, ch. 38, pars. 151 ("issues or passes" currency), 277 (to "make, alter, forge or counterfeit" or "utter, publish, pass or attempt to pass" records or writings), 278 ("makes, alters, forges or counterfeits" or "utters or passes, or tenders in payment" public securities or bank bills), 279 (to "make, pass, utter or publish" fictitious bills or notes), 280 ("connects together" parts of several bills), 401 (to "steal, embezzle, alter, corrupt, withdraw, falsify or avoid," "take off, discharge or conceal," "forge, deface or falsify," or "alter, deface or falsify" public records).) In the context of section 17—3, we see no intended distinction between issuing a document and delivering one. "Issue" and "deliver" have replaced words such as "utter," but without producing a change in essential meaning; "[t]he words 'uttering' or 'to utter' have a clear definition in law; they mean substantially 'to offer' (*People v. Katz* (1934), 356 Ill. 440, 445)" (*People v. Henderson* (1978), 71 Ill. 2d 53, 57, 373 N.E.2d 1338. 1340).

Thus, unlike the language in the prostitution statute, "performs, offers or agrees to perform," which the supreme court has construed as enumerating three distinct ways of committing the offense (*People v. Johnson* (1976), 65 Ill. 2d 332, 357 N.E.2d 1166; Ill. Rev. Stat. 1975, ch. 38, par. 11—14(a)), the conjunction "or" connects broadly overlapping terms here. To be sure, to the extent that "issue" or "deliver" are synonymous, one of them becomes redundant. The defendant's suggestion that "issue" be defined as a first delivery is subject to the same objection, however, for under that meaning "issue" is totally subsumed by "deliver."

■ Therefore, we conclude that the evidence adduced at trial did not vary from the allegations in the indictment. The defendant was

proved guilty of the offenses beyond a reasonable doubt.

Affirmed.

MILLS, P.J., and WEBBER, J., concur.