No. 86,793

STATE OF KANSAS, *Appellee*, v. STORY L. GOTTI, *Appellant*.

(43 P.3d 812)

Opinion filed April 19, 2002.

*Rick Kittel*, assistant appellate defender, argued the cause, and *Steven R. Zinn*, deputy appellate defender, was with him on the brief for appellant.

*Ian H. Taylor*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: Story Gotti appeals his conviction following a bench trial of making false information. Gotti argues he should have been charged with forgery. We agree and reverse his conviction.

After a bench trial involving the testimony of two witnesses, the district court convicted Gotti of one count of making false information. Ken Haley, a Dillard's store manager, worked with Gotti in the men's department at the store. Haley testified he noticed irregular transactions from the men's department register. Haley described the irregularity in two transactions:

"Well, there were several things. The one transaction that was for four sweaters was voided out and then immediately following that, 2 minutes later, I believe it was the same sweaters were being returned for a, what we call a merchandise only receipt."

Generally, a customer receives a merchandise only receipt when items are returned without the original receipt. The customer receives credit with the merchandise only receipt with which other store items can be purchased. The receipt indicates the issuing employee's identification number in the top left corner.

In this case, the identification number on the merchandise only receipt belonged to another Dillard's employee, Leslie Duncan. Upon interviewing Duncan, Haley determined Duncan did not ring the transactions.

An audit copy of the receipt must be signed by the customer, show the customer's address, and show the signature of the employee who initiated the transaction. In this case, the audit copy purported to be signed by Duncan; however, Duncan did not initiate the transaction. The customer on the audit copy purported to be Amy Bailey. Haley stated that the audit copy was used in exchange for other Dillard's merchandise.

Haley testified that when he interviewed Gotti regarding the transactions, Gotti admitted he had made the transactions because he needed money. On cross-examination, Haley described the transaction:

"The sweaters never left the store. The sweaters were taken off the floor, rung at the register, put back on the floor. They never were purchased, they were never taken out of the store. It was false information being rung through the register to gain a merchandise only [receipt] for $600, to take that receipt and go somewhere else and buy more merchandise."

Bradley Bryant, a Wichita police detective with the financial crimes section, testified that he interviewed Gotti:

"I had been shown some receipts, and I asked Mr. Gotti if he had falsified any receipts for Dillard's. Mr. Gotti indicated that he had, that he needed money and that he had created a false sale and return and that he had given those receipts to his girlfriend to take to another Dillard's store where she was able to purchase TV, perfume and a cologne using those receipts, and he indicated that he had done that, those particular acts."

Bryant stated that Amy Bailey is Gotti's girlfriend. Gotti gave the merchandise only receipt to Bailey.

Relying on *State v. Rios*, 246 Kan. 517, 792 P.2d 1065 (1990), Gotti argues the State improperly charged him with making false information under K.S.A. 2001 Supp. 21-3711, instead of forgery under K.S.A. 21-3710. Resolution of this issue involves the interpretation of statute, and the standard of review is, therefore, unlimited. See *State v. Robinson*, 261 Kan. 865, 874, 934 P.2d 38 (1997).

Making false information is defined in K.S.A. 2001 Supp. 21-3711:

"Making false information is making, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account with knowledge that such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action."

## PIK Crim. 3d 59.13 contains the following relevant elements:

"To establish [making false information], each of the following claims must be proved:
"1. That the defendant knowingly (made) (generated) (distributed) (drew) (caused to be [made] [generated] [distributed] [drawn]) (a written instrument) (an electric data) (an entry in a book of account);
"2. That the defendant knew that such information falsely stated or misrepresented some material matter which was not what it purported to be;
"3. That the defendant intended to (defraud) (obstruct the detection of a [theft] [____, a felony offense]) (induce official action)."

The State was required to prove Gotti (1) knowingly made a written instrument, (2) that Gotti knew to be false, (3) with the intent to defraud or obstruct the detection of a felony.

Forgery is defined in K.S.A. 21-3710 as:

"(a) Forgery is knowingly and with intent to defraud:
(1) Making, altering or endorsing any written instrument in such manner *that it purports to have been made, altered or endorsed by another person*, either real or fictitious, and if a real person without the authority of such person; or altering any written instrument in such manner that it purports to have been made at another time or with different provisions without the authority of the maker thereof; or making, altering or endorsing any written instrument in such manner that it purports to have been made, altered or endorsed with the authority of one who did not give such authority." (Emphasis added.)

## PIK Crim. 3d 59.11 includes the following elements for forgery:

"To establish [forgery], each of the following claims must be proved:
"1. That the defendant knowingly made, altered or endorsed a ____ so it appeared to have been (made) (endorsed) (by ____) (at another time) (with different provisions) (by the authority of ____, who did not give such authority.

. . . .

"2. That the defendant did this act with the intent to defraud."

Thus, under the forgery statute, the State would have to prove that (1) Gotti made a writing, (2) so it appeared to have been made by another, and (3) with the intent to defraud.

This court in *Rios*, another case involving Dillard's employees, reviewed two defendants' convictions of making a false writing and of theft by deception. The *Rios* court quoted the statute in effect at the time, noting:

> " 'Making a false writing is making or drawing or causing to be made or drawn any written instrument or entry in a book of account with knowledge that such writing falsely states or represents some material matter or is not what it purports to be, and with intent to defraud or induce official action.' " 246 Kan. at 528.

The making of a false writing was based on the defendants having printed phony refund vouchers on a training register. The phony refund vouchers purported to be filled out at the request of a Dillard's customer and signed by a customer seeking a refund of items previously purchased. The defendants used these phony refund vouchers to satisfy the store accounting procedures for cash or merchandise they had taken from the store. On appeal, *Rios* considered whether the defendants' actions properly fell within the definition of making a false writing rather than a forgery.

*Rios* noted two problems with the application of the false writing statute to the defendants' actions: "The first problem concerns the nature of the instruments themselves. The second concerns the intended and actual use of the instruments." 246 Kan. at 528. With regard to the first concern, the court cited prior case law involving the crime of making a false writing, concluding that the prior cases involved a defendant having made a false statement regarding his or her own affairs. However, the convictions in *Rios* were based on the phony vouchers purportedly signed by Dillard's customers: "In short, the vouchers were forged instruments." 246 Kan. at 529. The court then quoted the forgery statute, K.S.A. 21-3710, and concluded as follows:

> "Forgery is a class E felony. Making a false writing is a class D felony. Clearly, the legislature intended that the conduct proscribed by K.S.A. 21-3711 deserves a more severe penalty than does the conduct proscribed by K.S.A. 21-3710. The State herein apparently believes it is free to elevate any forgery to the making of a false writing at whim as the latter statute includes all forgeries. We do not agree.

The forgery statute specifically proscribed the making of an instrument which appears to have been made by another without that person's consent. Such other person may be real or fictitious. This is precisely what defendants are alleged to have done herein, and, hence, the conduct cannot also constitute the making of a false writing contrary to K.S.A. 21-3711. *We conclude that the conduct proscribed by K.S.A. 21-3711 does include conduct defined as forgery under K.S.A. 21-3710.*" (Emphasis added.) 246 Kan. at 529-30.

With regard to the second concern, *Rios* noted that the defendants had only been charged under the making a false writing statute with the alternative specific intent of "with intent to defraud." 246 Kan. at 528. The *Rios* court considered whether the defendants' actions amounted to an intent to defraud, finding there was no such intent with respect to the phony refund vouchers because the vouchers were used to cover up the crime which had already been committed:

"Defendants did not obtain the money represented on each voucher because of the voucher. Dillard's was not induced and was not intended to be induced to part with the money shown on the voucher by presentation of the voucher. Dillard's had been deprived of the money shown on the voucher before the voucher was processed by Dillard's. Each voucher was created for and used to cover up the theft of the money shown on its face. Intent to defraud requires that the maker of the instrument intended to deceive another person and to induce such person, in reliance upon the deception, to assume, create, transfer, alter, or terminate a right, obligation, or power with reference to property. The evidence herein does not satisfy this element." 246 Kan. at 530.

*Rios* considered the argument that the cover-up could be considered evidence of an intent to defraud because the defendants would be able to perpetuate their scheme in the future; however, the court, considering the strict construction of criminal statutes, rejected this argument. In conclusion, the court noted that the evidence was not sufficient to support the conviction of making a false writing. 246 Kan. at 530-31.

The *Rios* court excluded acts constituting forgery from the definition of making a false writing. The issue in this case is whether that exclusion is still valid in light of statutory amendments to K.S.A. 21-3711.

We reverse Gotti's conviction based on the first of the two concerns addressed by the court in *Rios*. K.S.A. 2001 Supp. 21-3711,

with regard to the first concern, requires that the making of false information be done in the writer's own name. A forgery is a writing which purports to be that of another. This case presents the same concern. The receipts purported to have been initiated by another employee, Duncan. However, the evidence presented to the trial court showed that the transaction was initiated by Gotti.

The State argues this present case is distinguishable from *Rios* in two respects. First, the State argues the statute defining the crime of making false information has been amended, including a new specific intent alternative. K.S.A. 21-3711 was amended in 1992 and 1993 to conform to the sentencing guidelines. See L. 1992, ch. 239, sec. 109; L. 1993, ch. 291, sec. 71. In 1996, 21-3711 was amended to change the crime from "making a false writing" to "making a false information" and to include electronic falsifications:

"Making, *generating, distributing* a false ~~writing~~ *information* is making or drawing or causing to be made, *generated, distributed* or drawn any written instrument *electronic data* or entry in a book of account with knowledge that such ~~writing~~ *information* falsely states or represents some material matter or is not what it purports to be, and with intent to defraud or induce official action." L. 1996, ch. 157, §2.

In 1997, 21-3711 was amended to change the crime to "making false information" and to include the specific intent to "obstruct the detection of a theft or felony offense." L. 1997, ch. 66, sec. 1.

Over Gotti's objection, the prosecutor amended the complaint in this case to allege Gotti made the false information "with the intent to obstruct the detection of a theft or felony offense or induce official action." The record indicates the prosecutor may have done this after Gotti's attorney raised the issue in *Rios*.

The facts of this case render the second concern in *Rios* inapplicable. The facts in *Rios* can be distinguished because the receipts in the present case were made with the intent to defraud, unlike the receipts in *Rios*. The defendants in *Rios* were stealing money first and creating the receipts in order to satisfy the accounting procedures; therefore, "Dillard's was not induced and was not intended to be induced to part with the money shown on the voucher by presentation of the voucher." 246 Kan. at 530. Both the present

definitions of forgery and making false information include the language "intent to defraud." See K.S.A. 2001 Supp. 21-3710; K.S.A. 2001 Supp. 21-3711.

In contrast, Gotti created the receipt to give to his girlfriend, who would later present it in exchange for merchandise. The words "obstruct the detection of a theft or felony offense" contained in both the amendment to K.S.A. 21-3711 and the amendment to the complaint in this case are not applicable because the receipts were created to induce Dillard's to part with merchandise later upon presentment.

While the amendment to K.S.A. 21-3711 could have addressed the second concern in *Rios*, as applied to the facts of that case, the amendment did not affect the court's first concern that forgery is the "making of an instrument which appears to have been made by another without that person's consent," while making false information involves the perpetrator's "own business or affairs." 246 Kan. at 529. The State admits Gotti "did not act in his own name when he created the merchandise receipt for his girlfriend."

The State cites *State v. Welsh*, 26 Kan. App. 2d 362, 988 P.2d 261 (1999), for the proposition that Gotti's conviction be affirmed because he aided and abetted his girlfriend. Under this theory, Gotti's culpability derives from the actions of Bailey, who acted in her own name. Thus, Gotti, under an aiding and abetting theory, falls within the definition of making false information under K.S.A. 2001 Supp. 21-3711. The defendant in *Welsh* cited *Rios*, arguing that "in order to be convicted of making a false writing, an individual must be acting within his or her own identity." The *Welch* court rejected the argument because "Welsh aided and abetted Shuey in the making of the false writing." 26 Kan. App. 2d at 363. Welsh was convicted by a jury that had been instructed on an aiding and abetting theory. Thus, *Welsh* can be distinguished because the State never proceeded on an aiding and abetting theory in this case.

We reverse Gotti's conviction because he was improperly charged and convicted of the crime of making false information. We need not address Gotti's other arguments.

Reversed and remanded for further proceedings.