NOT DESIGNATED FOR PUBLICATION

No. 123,783

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARNEZ L. SMITH,
*Appellant*.


MEMORANDUM OPINION


Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed April 1, 2022. Affirmed.


*James M. Latta*, of Kansas Appellate Defender Office, for appellant.


*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., POWELL and CLINE, JJ.


PER CURIAM:  Marnez L. Smith appeals from his convictions and sentences for one count of unlawful acts concerning computers and one count of felony theft. Smith argues there was insufficient evidence to support his conviction for unlawful acts concerning computers, asserting the specific subsection under which he was convicted contains an alternative means for committing the crime and the State failed to prove one of the alternative means. Smith further argues the district court erred in failing to give the jury a unanimity instruction on the felony theft charge even though the State's complaint alleged he engaged in a common scheme or course of conduct involving two or more

1

separate acts of theft. Finally, Smith argues the district court erred in ordering restitution in excess of the actual harm caused by his crimes of conviction. Finding no reversible error, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND

In July 2018, Smith was hired to work as teller for EquiShare Credit Union in Wichita. After a two-week training period, Smith went to work in EquiShare's main office. Smith's employment at EquiShare did not go well and did not last long. He was ultimately fired on August 31, 2018, after he approached another employee and asked to borrow money, which was a violation of EquiShare's employment policies. There had also been several instances during his employment in which there were inconsistencies in Smith's drawer balance.

In August 2018, an EquiShare customer, John Nash, received his monthly statement and noticed a $200 withdraw from his account, which neither he nor his wife had authorized. Nash reported the transaction to EquiShare, and EquiShare's senior vice president, Freda Reynolds, investigated the matter. Reynolds discovered Smith had been the teller for Nash's disputed transaction, and Nash had not signed for the withdraw. Reynolds reviewed all of Smith's register receipts for any withdraws that did not have a customer's signature and found three additional transactions. Reynolds looked at security footage from the time of the transactions and found neither Nash nor the other affected customers were present at the time of the withdraws. In total, Reynolds determined Smith withdrew $3,200 from the four affected accounts without the account holders' authorization.

The State charged Smith with one count of felony theft and one count of unlawful acts concerning computers. A jury convicted him as charged. At sentencing, the district imposed a 14-month prison sentence but placed Smith on probation from that sentence

for 12 months. The district court also ordered Smith to pay $4,100 in restitution, to which Smith did not object.

Smith timely appeals.

I.      K.S.A. 2018 SUPP. 21-5839(a)(2) DOES NOT CONTAIN ALTERNATIVE MEANS OF COMMITTING THE CRIME.

Smith argues there was insufficient evidence to support his conviction for unlawful acts concerning computers under K.S.A. 2018 Supp. 21-5839(a)(2), which provides it is unlawful to

> "use a computer, computer system, computer network or any other property for the purpose of devising or executing a scheme or artifice with the intent to defraud or to obtain money, property, services or any other thing of value by means of false or fraudulent pretense or representation."

While Smith concedes there was sufficient evidence to show he executed a scheme to obtain money, property, services, or anything of value by false or fraudulent pretense or representation, he argues there was no evidence he executed a scheme with the intent to defraud. Smith asserts K.S.A. 2018 Supp. 21-5839(a)(2) contains an alternative means for committing the crime—acting with the intent to defraud—which is a distinct alternative means of committing the crime as opposed to acting with intent to obtain money, property, services, or any other thing of value by means of false or fraudulent pretense or representation.

*Standard of Review*

"An alternative means crime is one that can be committed in more than one way. [Citations omitted.]" *State v. Rucker*, 309 Kan. 1090, 1094, 441 P.3d 1053 (2019). Whether a statute provides alternative means is an issue of statutory interpretation, which presents a question of law subject to our unlimited review. *State v. Brown*, 295 Kan. 181, 193-94, 284 P.3d 977 (2012). We need not otherwise consider the sufficiency of the evidence if the statute simply provides options within a means because Smith concedes there was sufficient evidence he acted with an "intent to . . . obtain money, property, services or any other thing of value by means of false or fraudulent pretense or representation." K.S.A. 2018 Supp. 21-5839(a)(2).

*Discussion*

Although Smith may be correct that there was insufficient evidence to show he acted with an intent to defraud, he is not entitled to relief because he fails to establish K.S.A. 2018 Supp. 21-5839(a)(2) contains alternative means for committing the crime of unlawful acts concerning computers. "Alternative means are legislatively determined, distinct, material elements of a crime, as opposed to legislative descriptions of the material elements or of the factual circumstances that would prove the crime." *State v. Foster*, 298 Kan. 348, Syl. ¶ 4, 312 P.3d 364 (2013). "'The legislature typically signals its intent to create an alternative means by "separating alternatives into distinct subsections of the same statute."'" [Citations omitted.]" *State v. Butler*, 307 Kan. 831, 841, 416 P.3d 116 (2018). Here, the Legislature did so by creating alternative means for committing unlawful acts concerning computers in subsections (a)(1) through (a)(5) of K.S.A. 2018 Supp. 21-5839. Thus, it seems illogical for us to infer a legislative intent to create an additional internal alternative means within subsection (a)(2) when the Legislature could have simply separated the "intent to defraud" and the "intent to . . . obtain money,

property, services or any other thing of value by means of false or fraudulent pretense or representation" into separate statutory subsections.

The name of the statute says what it means and means what it says; it is about "[u]nlawful acts concerning computers." K.S.A. 2018 Supp. 21-5839. The relevant conduct criminalized under subsection (a)(2) is the "*use* [of] a computer, computer system, computer network or any other property *for the purpose of devising or executing a scheme or artifice . . . .*" (Emphases added.) K.S.A. 2018 Supp. 21-5839(a)(2). The specified object of the "scheme or artifice" is engaging in dishonest conduct. K.S.A. 2018 Supp. 21-5839(a)(2). That dishonest conduct can be reflected by either an intent to defraud or an intent to obtain property or other items of value through false or fraudulent pretense or representation. But an intent to defraud or an intent to act under false or fraudulent pretense or representation is effectively a distinction without a difference based on the structure of the statute. These are "legislative descriptions . . . of the factual circumstances that would prove the crime." *Foster*, 298 Kan. 348, Syl. ¶ 4. Whether a person engages in fraud or acts under false pretense or representation, the person cannot act honestly; there is no honest fraud, and there is no truthful falsehood.

In our view, Smith focuses too much on the conjunction "or" in the statutory language "intent to defraud *or* to obtain . . . by means of false or fraudulent pretense or representation." (Emphasis added.) K.S.A. 2018 Supp. 21-5839(a)(2). Smith's argument is unpersuasive because there is no meaningful distinction within subsection (a)(2) between "intent *to defraud*" and "intent to . . . obtain . . . [something] of value *by means of false or fraudulent* pretense or representation." (Emphases added.) K.S.A. 2018 Supp. 21-5839(a)(2). An "intent to defraud" is an intent "to *deceive* another person, and to induce such other person, in reliance *upon such deception*, to assume, create, transfer, alter or terminate a right, obligation or power *with reference to property*." (Emphases added.) K.S.A. 2020 Supp. 21-5111(o). The deception needed to defraud someone necessarily requires a "false or fraudulent pretense or representation" by the person

5

committing the fraud. K.S.A. 2018 Supp. 21-5839(a)(2); see K.S.A. 2020 Supp. 21-5111(o). And someone who intends to "*obtain money, property, services or any other thing of value* by means of false or fraudulent pretense or representation" necessarily affects another person's "right . . . *with reference to property*." (Emphases added.) K.S.A. 2020 Supp. 21-5111(o); K.S.A. 2018 Supp. 21-5839(a)(2).

We hold K.S.A. 2018 Supp. 21-5839(a)(2) does not contain alternative means of committing the crime. As a result, sufficient evidence supports Smth's conviction for unlawful acts concerning computers.

II.     THE DISTRICT COURT DID NOT ERR IN FAILING TO SUA SPONTE GIVE THE JURY A MULTIPLE ACTS INSTRUCTION OF THE FELONY THEFT CHARGE.

Smith also argues the district court erred in failing to give, sua sponte, a multiple acts instruction to the jury because the State charged him with committing felony theft for stealing property in two or more acts as part of a continuing course of conduct. See K.S.A. 2018 Supp. 21-5801(a)(1) and (b)(5).

*Standard of Review*

"'When analyzing jury instruction issues, we follow a three-step process:
"(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.'" [Citation omitted.]" *State v. Holley*, 313 Kan. 249, 253, 485 P.3d 614 (2021).

At the second step, we consider whether the instruction was legally and factually appropriate, "using an unlimited standard of review of the entire record." *Holley*, 313 Kan. at 254. In determining whether an instruction was factually appropriate, we must

6

determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. Whether a party has preserved a jury instruction issue affects our reversibility inquiry at the third step. See 313 Kan. at 254-55.

When a party fails to object to a jury instruction before the district court, we review the instruction to determine if it was clearly erroneous. K.S.A. 2020 Supp. 22-3414(3). For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and we must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice. *State v. Crosby*, 312 Kan. 630, 639, 479 P.3d 167 (2021). If the instructional error impacts a constitutional right, "we must assess whether the error was harmless under the federal constitutional harmless error standard, *i.e.*, whether there was 'no reasonable possibility' that the error contributed to the verdict. [Citations omitted.]" *State v. Andrew*, 301 Kan. 36, 46-47, 340 P.3d 476 (2014); see *Holley*, 313 Kan. at 256-57.

*Discussion*

Contrary to the State's argument, a multiple acts instruction would have been legally and factually appropriate based on the evidence presented. The State presented evidence that Smith committed four individual acts of theft from customer accounts between August 18, 2018, and August 30, 2018, ranging between $200 and $1,000 each. To constitute felony theft, the jury would have had to find Smith stole "property of the value of less than $1,500 . . . in two or more acts or transactions connected together or constituting parts of a common scheme or course of conduct . . . ." K.S.A. 2018 Supp. 21-5801(b)(5). Here, a multiple acts instruction—or, more specifically, a unanimity instruction regarding the multiple acts—was legally and factually appropriate because as long as the jury unanimously agreed Smith committed two of the four alleged thefts as

7

part of a common scheme or course of conduct, he could be convicted as charged. In other words, *all* the jurors needed to at least agree Smith committed the *same* two acts, even if there might be disagreement whether he also committed the third and fourth acts. In fact, the relevant Pattern Instructions Kansas (PIK)—which the jury instruction followed—reflects this is a multiple acts crime, as PIK Crim. 4th 58.040 (2017 Supp.) is titled "Theft—Multiple Acts—Common Scheme."

Here, the district court provided following elements instruction for theft to the jury:

"The defendant is charged in Count 1 with the crime of theft of property. The defendant pleads not guilty.

"To establish this charge, each of the following claims must be proved:

"1. a. J.S.N. owned the property;

b. W.V.F. owned the property;

c. L.S.G. owned the property;

d. J.T.B. owned the property;

"2. The defendant exerted unauthorized control over the property;

"3. a. The defendant intended to deprive J.S.N. permanently of the use or benefit of the property;

b. The defendant intended to deprive W.V.F. permanently of the use or benefit of the property;

c. The defendant intended to deprive L.S.G. permanently of the use or benefit of the property;

d. The defendant intended to deprive J.T.B. permanently of the use or benefit of the property;

"4. The defendant committed two or more of the acts described above.

"5. The acts were connected together or constituted part of a common scheme or course of conduct.

"6. The value of the property taken in each act was less than $1,500.

"7. That these acts occurred on or between the 21st day of August, 2018, and the 30th day of August, 2018, in Sedgwick County, Kansas."

8

Smith takes issue with paragraph 4 of the jury instruction and expounds at length as to why a unanimity instruction on multiple acts should have been given. Ultimately, his argument rests on the idea that such an instruction would have been legally and factually appropriate. However, we need not answer Smith's challenge because even if we were to assume that a unanimity instruction was both legally and factually appropriate, Smith fails to persuade us that the jury would have reached a different verdict if such an instruction had been given.

The evidence was largely the same with respect to the four victims: None of them signed the transaction receipts; none of them were present at the time of the transactions; and Smith was the teller who processed the transactions. Smith complains there was no video evidence of him "pocketing the money he supposedly stole." But this is true for all four transactions. The only meaningful discrepancy in the evidence is that one victim did not testify at trial, whereas the other three victims testified about the thefts from their accounts. Even so, the evidence was essentially identical as to three of the four victims. And the State only needed to prove Smith committed at least two thefts. See K.S.A. 2018 Supp. 21-5801(b)(5). It is undisputed the value of the property involved in each of the alleged thefts was less than $1,500, and Smith points to no evidence suggesting the thefts were not part of a common scheme or course of conduct.

Smith also makes no clear argument why the jury would not have at least unanimously agreed he committed the individual thefts from the accounts of Nash and the other two victims. Instead, he simply points to the fact the jury asked a question about the instruction. What Smith fails to acknowledge, however, is the district court dealt with the jury's question by allowing the parties to reopen their closing arguments, giving them each five minutes to explain to the jury how the facts applied to the law as set forth in the jury instruction. More importantly, Smith never explains how the district court's actions were insufficient to remedy the alleged instructional error.

9

In relevant part, the jury submitted a written question to the district court during its deliberation, asking:

> "On Instruction [number] 8 we have a question about the wording of [paragraph 4], does the acts above include [the] statements [in paragraphs] 1, [2 and,] 3, or is it [paragraphs] 3a, 3b, 3c, [and] 3d? On [paragraph] 5 are we referring to [paragraph 2] or all acts stated [in paragraph 3]?"

Based on this question, the district court determined, sua sponte, the parties should be allowed to reopen closing arguments to explain how the instruction applied to the facts presented at trial. As the State points out in its brief, in its supplemental closing argument, the State explained to the jury, in relevant part:

> "Then you move on to number two, that the defendant exerted unauthorized control over the property. Whichever the property *you unanimously identified*, we have to prove the defendant exerted unauthorized control over that.
>
> "Number three, that is—and that is an act of the defendant that we have to prove, so that's one.
>
> "And then there is another act with respect to [paragraph] 3; 3a, 3b, and 3c and 3d. Those are four choices. *You must unanimously find two*—at least two. You can find all four. You can find three, but you must at least find two. If you don't find two, then you don't have a verdict or at least you don't have a verdict of guilty.
>
> "With respect to [paragraph] 4, that's just referring you back to two or more at question three. Okay. But you still must find that.
>
> "Let's say for example, you find 3a, that the defendant intended to deprive JSN permanently of the use or benefit of the property. *If you find that unanimously*, you must still have found that JSN owned that property. Does that make sense? It must correspond.
>
> "In other words, *if you find unanimously 3a you must have found unanimously 1a, and 2, that the defendant exerted control over it.*
>
> "*You must also find unanimously* that the facts were—I'm on number five now—that the acts constituted a common scheme, course of conduct." (Emphases added.)

Smith's counsel also explained to the jury, in relevant part:

"[Paragraph] 4 explains that Mr. Smith—you must find—if you determine beyond reasonable doubt—you must find that Mr. Smith committed two or more of the acts described above.

"So you would need to describe two or more or find as to two or more of those. *These have to be unanimous.* That means all of you have to decide. Let's take for instance, or example, JSN, as to A. All of you would have to find as to A, and all of you would have to find as to one of the other examples. *It couldn't be a split finding of two.* And then that the acts were connected together or constituted a common scheme or course of conduct. That refers you back to the two if you were able to find two. And then, of course, the value which has already been explained and *each of those would have to be a unanimous finding as well.*

"So *in each step, it has to be a unanimous finding.* And the burden *should be applied to each element of each step within the instruction.*" (Emphases added.)

The parties' supplemental closing arguments properly explained to the jury its verdict had to be unanimous on which two acts of theft it believed occurred. Smith fails to explain how the above-cited supplemental explanations were insufficient to resolve any questions the jury had about the instruction.

The parties agree any error in the failure to give a unanimity instruction potentially affected Smith's constitutional right to a unanimous jury verdict as recognized in *Ramos v. Louisiana*, 590 U.S. ___, 140 S. Ct. 1390, 1396-97, 206 L. Ed. 2d 583 (2020). But even under the constitutional harmless error standard, the State easily meets its burden here to prove "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, where there is no reasonable possibility that the error contributed to the verdict." *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

11

III.   ANY ERROR IN THE AMOUNT OF RESTITUTION ORDERED WAS INVITED BY SMITH.

Finally, Smith argues the district court erred in ordering him to pay $4,100 in restitution when the evidence at trial only established he stole $3,200 from the affected customers.

*Standard of Review*

When a defendant challenges the propriety of the amount of restitution ordered, we review the district court's decision for an abuse of discretion. *State v. Holt*, 305 Kan. 839, 842, 390 P.3d 1 (2017). "A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. [Citation omitted.]" *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

*Discussion*

"The appropriate [restitution] amount is that which compensates the victim for the actual damage or loss caused by the defendant's crime. And the most accurate measure of this loss depends on the evidence before the district court." *State v. Hall*, 297 Kan. 709, 713-14, 304 P.3d 677 (2013). As long as the evidence properly establishes the "requisite causal connection" between the defendant's acts and the victim's losses, the district court's restitution award will be upheld. 297 Kan. at 714. "Generally, '"[a] district court's factual findings relating to the causal link between the crime committed and the victim's loss"' are reviewed for substantial competent evidence. [Citations omitted.]" *State v. Arnett*, 307 Kan. 648, 653, 413 P.3d 787 (2018). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support a conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

The State argues we should decline to review the issue because, at sentencing, Smith failed to object to the restitution order and thus acquiesced to the order and/or invited the error.

Smith acknowledges he failed to object below but asserts this issue can be reviewed for the first time on appeal because restitution is a component of his sentence, and an illegal sentence claim may be raised at any time. See *State v. Dickey*, 301 Kan. 1018, 1027, 350 P.3d 1054 (2015) (claim of illegal sentence may be raised for first time on appeal); *State v. Hall*, 298 Kan. 978, 986, 319 P.3d 506 (2014) (restitution is part of defendant's sentence). Smith further argues the issue may be considered for the first time on appeal because (1) the claim arises on proven or admitted facts, which are determinative of the case, and (2) consideration of his claim is necessary to serve the interests of justice or prevent the denial of his fundamental rights. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (noting exceptions to preservation requirement for issues not raised below).

Even if we assume the issue may be properly considered for the first time on appeal, we agree with the State that Smith invited any error concerning the amount of restitution.

It is well established that a party "may not invite an error and then complain of the error on appeal." *State v. Stoll*, 312 Kan. 726, 735, 480 P.3d 158 (2021). Moreover, other panels of our court have held that a defendant acquiesces and invites the error when the defendant argues the district court's restitution amount was based on the prosecutor's statement alone if the defendant requested no evidentiary hearing or expressly declined to object to the restitution amount. See *State v. Alexander*, No. 116,618, 2017 WL 3203392, at *1 (Kan. App. 2017) (unpublished opinion) ("'We would not object to the $2,800.00'"); *State v. Jones*, No. 109,442, 2014 WL 1612459, at *1-2 (Kan. App. 2014) (unpublished opinion) ("We have no objection to that []400-dollar amount.'").

At sentencing, Smith's counsel responded to the State's request for $4,100 in restitution, stating: "I don't have an objection to that restitution amount given that we had the trial and the evidence [has] already been heard." Thus, the record is clear that Smith acquiesced to the restitution amount by expressly not objecting to the State's restitution amount and by failing to ask for an evidentiary hearing. To the extent that the district court's restitution amount is unsupported by the evidence in the record, Smith invited any such error and cannot complain now about such amount on appeal.

Affirmed.