2020 IL App (1st) 172813-U

No. 1-17-2813

Order filed June 16, 2020

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 15 CR 13908 |
| | ) | |
| MYRA PENNY, | ) | Honorable |
| | ) | Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COGHLAN delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:   Defendant's conviction for forgery is affirmed over her challenge to the sufficiency of the evidence of delivery and intent to defraud.

¶ 2    Following a bench trial, defendant Myra Penny was convicted of forgery and sentenced to 24 months of probation. On appeal, defendant contends that the State failed to prove beyond a reasonable doubt that she knowingly issued or delivered a false document and had the requisite intent to defraud. We affirm.

¶ 3　Defendant and Dorothea Fleming were charged by indictment with multiple counts of theft and forgery involving a charitable organization, Wayside Church (Wayside). The State proceeded against defendant on one count of theft (720 ILCS 5/16-1(a)(2)(A) (West 2012)), which alleged she and Fleming falsely executed documents purporting to transfer title to real property and a Rolls Royce vehicle owned by Wayside, and one count of forgery (720 ILCS 5/17-3(a)(2) (West 2012)), which alleged they issued a false warranty deed that was registered with the Cook County Recorder of Deeds (recorder's office).

¶ 4　Fleming testified that she pled guilty to "defrauding Wayside" and was sentenced to probation. As a condition of her probation, she was required to testify against defendant.

¶ 5　Fleming stated that she had worked for a nonprofit organization in Chicago for 25 years, and as part of her job, mailed her employer's rent payments to Wayside. In January 2012, defendant visited Fleming's office and stated that she was looking for real estate for Wayside. Fleming told defendant that her employer paid rent to Wayside at a post office box. Later that month, defendant returned to Fleming's office and asked for Wayside's contact information. Fleming provided an address, which defendant wrote down.

¶ 6　Defendant returned to Fleming's office a third time. During this meeting, defendant showed Fleming an annual corporate report for Wayside dated 2007, which listed Fleming on Wayside's board of directors. Fleming never sat on Wayside's board of directors, and did not know how her name was added to the report. Defendant told Fleming that Wayside had been "closed," and asked her to sign certain documents to "reopen" the church because Fleming was a board member. These documents comprised an application to reinstate Wayside as an Illinois nonprofit corporation; annual corporate reports for Wayside dated 2008 through 2011; and a statement of

change of registered agent for Wayside, designating its new registered agent as Fleming. Fleming signed the documents and dated them January 19, 2012.

¶ 7    Defendant also provided Fleming with a contract for the sale of real estate owned by Wayside (Wayside property) to a company called K&A Properties, LLC (K&A Properties); a "resolution" purporting to authorize Fleming to sell the Wayside property; and a warranty deed conveying the Wayside property to K&A Properties. Fleming signed these documents, dating them January 19, 23, and 30, 2012, respectively, and returned them to defendant. After signing all the documents, a woman later identified as Danijela Milutinovic accompanied defendant to Fleming's office and gave Fleming payments of $500 and $2500, which Fleming used, respectively, to pay her employer's bills and her own taxes. Fleming had no contact with defendant thereafter, and did not file any of the documents with the recorder's office or the Illinois Secretary of State.

¶ 8    The State moved all these documents into evidence by agreement with the defense, along with Wayside's annual report for 2012, which identified Fleming as the registered agent and included defendant and "D. Milutinovic" as directors. Additionally, the State entered the warranty deed Fleming signed and dated January 30, 2012. The warranty deed, which is included in the record on appeal, purports to convey the Wayside property from Wayside to K&A Properties. A stamp on the warranty deed indicated it was filed at the recorder's office on November 29, 2012, where it was designated document number 1233435000.

¶ 9    On cross-examination, Fleming acknowledged telling investigators from the Office of the Attorney General that she only used Milutinovic's payments to pay her taxes. However, Fleming acknowledged that she signed an affidavit stating that she did not receive money for signing the documents defendant brought her and that she had never met Milutinovic.

¶ 10    Barry Goldberg, assistant chief of the Charitable Trust Bureau at the Office of the Illinois Attorney General, testified that his office investigated Wayside in 2012. The investigation involved allegations that individuals were seeking to reinstate Wayside as a nonprofit corporation to improperly obtain assets that Wayside held in its dissolved state, namely, real estate, at least one bank account, and a Rolls Royce. Goldberg explained that Wayside had to be reinstated by a holdover director from the original corporation, which did not occur.

¶ 11    On June 29, 2012, defendant met Goldberg at his office in response to an administrative subpoena. Defendant did not bring any documents. Goldberg showed defendant a copy of the warranty deed dated January 30, 2012, which he had obtained in the course of his investigation. The copy of the warranty deed in Goldberg's possession did not show it had been recorded with the recorder's office. Goldberg told defendant the warranty deed "was not valid," and that Wayside "had not been properly reinstated."

¶ 12    Sometime later, Goldberg had an investigator contact defendant and her attorney responded. Goldberg met with defendant and the attorney on November 1, 2012, and did not have further contact with defendant.

¶ 13    On cross-examination, Goldberg testified that certain documents purported to transfer property from Wayside to an organization called K&A Associates. In response to questions by the court, Goldberg explained that, when a charity is winding down business, it cannot transfer property to another party for a noncharitable purpose. Rather, the charity must ascertain the fair-market value for its property and put the proceeds from its sale towards its original charitable purpose.

¶ 14    The State entered stipulations authenticating the following documents, which were entered into evidence and are included in the record on appeal.

¶ 15    First, a memorandum of agreement between defendant and Milutinovic, K&A Properties' "sole manager and member," states that defendant "was involved with identifying" the Wayside property for "purchase by K&A." The memorandum provides that (1) defendant would receive 50% of the proceeds when K&A Properties sold the Wayside property to a third party; (2) defendant would pay Milutinovic half the appraised value of two vehicles on the Wayside property, a 1988 Rolls Royce and a 1975 Chevrolet Caprice; and (3) defendant would own the vehicles thereafter and be responsible for acquiring legal title to them. This document was signed by defendant on March 5, 2012, and recorded with the recorder's office on August 3, 2012.

¶ 16    Second, a release declares that K&A Properties' obligations under the March 5, 2012 memorandum of agreement were fully satisfied and releases K&A Properties from that agreement. The release was signed by defendant on September 5, 2012, and recorded with the recorder's office on September 20, 2012.

¶ 17    Third, a warranty deed dated September 5, 2012, conveys the Wayside property from K&A Properties to Coast to Coast Enterprises, LLC (Coast to Coast). This document was signed by Milutinovic and recorded at the recorder's office on December 11, 2012.

¶ 18    In closing argument, the State noted that the sale of the Wayside property from K&A Properties to Coast to Coast in September 2012 occurred after Goldberg informed defendant in June 2012 that the attempted reinstatement of Wayside was improper and that Wayside could not sell its property. The State also argued that the forgery count was based on defendant "allow[ing] the [warranty deed] to be issued to the recorder's office on November 29, 2012." In response,

defense counsel argued that Fleming had authority to convey the Wayside property, and defendant was not guilty of forgery because the warranty deed was not false.

¶ 19    The trial court acquitted defendant of theft but found her guilty of forgery, concluding that the act of forgery was "complet[ed]" when the warranty deed was filed with the recorder's office on November 29, 2012. The trial court subsequently denied defendant's motion for a new trial. In doing so, the court noted that no evidence showed defendant withdrew from the scheme, but instead, she intended to secure her "finder's fee" even after meeting with Goldberg. Following a sentencing hearing, the court imposed two years of probation. Defendant did not file a motion to reconsider sentence.

¶ 20    On February 7, 2020, the supreme court entered an order directing this court to allow defendant's late notice of appeal.

¶ 21    On appeal, defendant only challenges her conviction for forgery. Specifically, she maintains that the State failed to prove beyond a reasonable doubt that she played any role in filing the warranty deed with the recorder's office on November 29, 2012, or that she intended to defraud with respect to the warranty deed.

¶ 22    When a defendant challenges the sufficiency of the evidence supporting her conviction, the issue is "whether, viewing the evidence in the light most favorable to the State, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. King*, 2020 IL 123926, ¶ 52 (quoting *People v. Collins*, 106 Ill. 2d 237, 261 (1985)). The trier of fact determines the credibility of witnesses, the weight to be given to their testimony, and the inferences to be drawn from the evidence. *People v. Wright*, 2017 IL 119561, ¶ 70. "[W]here the evidence presented is capable of

producing conflicting inferences, the matter is best left to the trier of fact for proper resolution." *People v. Campbell*, 146 Ill. 2d 363, 380 (1992). The reviewing court "must allow all reasonable inferences from the record in favor of the prosecution." *People v. Bush*, 214 Ill. 2d 318, 326 (2005). We will reverse a conviction only where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of defendant's guilt. *Wright*, 2017 IL 119561, ¶ 70.

¶ 23    Defendant was charged with forgery under section 17-3(a)(2) of the Code of Criminal Procedure of 1963 (Code) (720 ILCS 5/17-3(a)(2) (West 2012)). That section of the forgery statute provides that a person commits forgery when, with intent to defraud, she knowingly issues or delivers a false document apparently capable of defrauding another, knowing it to have been thus made or altered. *Id.* Illinois courts refer to section 17-3(a)(2) of the Code as "forgery by delivery." *People v. Hockaday*, 93 Ill. 2d 279, 282 (1982). To prove defendant guilty under this theory, the State had to establish:

> "(1) a document apparently capable of defrauding another; (2) a making or altering of such document by one person in such manner that it purports to have been made by another; (3) knowledge by defendant that it has been thus made; (4) knowing delivery of the document; and (5) intent to defraud." (Internal quotation marks omitted.) *People v. De Filippo*, 235 Ill. 2d 377, 383 (2009).

¶ 24    Defendant only challenges the evidence supporting delivery and intent to defraud. As to the element of delivery, defendant argues the State presented no evidence as to who filed the warranty deed at the recorder's office on November 29, 2012.

¶ 25    The forgery statute does not define the terms "issuance" or "delivery." 720 ILCS 5/17-3 (West 2012). In the context of forgery by delivery under section 17-3(a)(2) of the Code, our

supreme court has defined "deliver" by its ordinary meaning, which is " '[t]o release'; '[t]o surrender to another; hand over'; '[t]o take to the intended recipient.' " *People v. Hagan*, 145 Ill. 2d 287, 301 (1991) (quoting American Heritage Dictionary 378 (2d ed. 1985)). For purposes of the statute, issuing and delivering a document are "broadly overlapping terms." *People v. Stevens*, 128 Ill. App. 3d 823, 826 (1984).

¶ 26    Here, the evidence showed defendant visited Fleming's office several times in January 2012, and represented that she was looking for real estate. Defendant obtained Fleming's signature on multiple documents related to transferring Wayside's real estate to K&A Properties, including the warranty deed conveying the Wayside property to K&A Properties, which Fleming signed on January 30, 2012, and returned to defendant. Goldberg obtained an unrecorded version of the deed sometime before his June 29, 2012 meeting with defendant during his investigation into Wayside. Defendant did not bring a copy of the warranty deed or any other documents to that meeting, however, and Goldberg did not testify that defendant brought a copy to the November 1, 2012 meeting, either. On November 29, 2012, the warranty deed was recorded at the recorder's office. Fleming denied that she recorded the warranty deed, and no other evidence established who did.

¶ 27    Defendant essentially argues the State failed to prove her guilty of forgery beyond a reasonable doubt because the evidence did not show that she brought the warranty deed to the recorder's office on November 29, 2012. The forgery statute, however, does not require proof defendant personally delivered the warranty deed to the recorder's office. 720 ILCS 5/17-3(a)(2) (West 2012). It merely requires proof that defendant issued or delivered the warranty deed to some other party. *Id.* Thus, for purposes of the element of delivery, the State did not need to prove defendant personally delivered the warranty deed to the recorder's office on November 29, 2012,

so long as the State proved defendant surrendered or handed the warranty deed to another. See *Hagan*, 145 Ill. 2d at 301.

¶ 28    While the State presented no direct evidence that defendant personally delivered the warranty deed to another party, that is not fatal to defendant's conviction. The State can prove an element of an offense by circumstantial evidence alone. *People v. Wheeler*, 226 Ill. 2d 92, 120 (2007). "Circumstantial evidence is 'proof of facts and circumstances from which the trier of fact may infer other connected facts which reasonably and usually follow according to common experience.' " *People v. McPeak*, 399 Ill. App. 3d 799, 801 (2010) (quoting *People v. Stokes*, 95 Ill. App. 3d 62, 68 (1981)). "In forgery cases, proof must often be by circumstantial evidence." *People v. Johnson*, 2018 IL App (1st) 150209, ¶ 24 (citing *People v. Baylor*, 25 Ill. App. 3d 1070, 1074 (1975)). That is because "forgery is not a crime that is committed openly." *People v. Brown*, 2013 IL 114196, ¶ 72 (Thomas, J., specially concurring) (citing *People v. Einstein*, 106 Ill. App. 3d 526, 532 (1982)). Rather, "[i]t is by nature secretive, and it is therefore necessary that certain elements be proved from logical deductions from the facts and evidence." *Id.*

¶ 29    In a case based on circumstantial evidence, the trier of fact need not be satisfied beyond a reasonable doubt as to each link in the chain of circumstances if all the evidence, considered collectively, satisfies the trier of fact beyond a reasonable doubt that the defendant is guilty. *People v. Slinkard*, 362 Ill. App. 3d 855, 857 (2005). Even if all of the State's evidence is circumstantial, the reasonable doubt test of *Collins* applies when reviewing the sufficiency of the evidence in a criminal case. *People v. McCullough*, 2015 IL App (2d) 121364, ¶ 98 (citing *People v. Pintos*, 133 Ill. 2d 286, 291 (1989)).

¶ 30    Viewed in the light most favorable to the State, the evidence established beyond a reasonable doubt that defendant delivered the warranty deed to another party. There is no question defendant possessed the warranty deed on January 30, 2012, when Fleming signed it and gave it to her. There is also no question the warranty deed was given to the recorder's office on November 29, 2012. Thus, at some point between January 30, 2012 and November 29, 2012, the warranty deed must have left defendant's possession. This, on its own, is sufficient to prove defendant "surrender[ed]" or "hand[ed] over" the warranty deed, either by personally delivering it to the recorder's office or by giving it to another party who caused it to be recorded. (Internal quotation marks omitted.) *Hagan*, 145 Ill. 2d at 301.

¶ 31    *People v. Caraga*, 2018 IL App (1st) 170123, is instructive. The defendant in *Caraga*, a loan officer, helped prepare a false loan application that was electronically transmitted to a lender, which approved the loan. *Caraga*, 2018 IL App (1st) 170123, ¶¶ 13, 18. He was convicted of forgery by delivery under section 17-3(a)(2) of the Code and, on appeal, argued there was no evidence he personally electronically delivered the loan application to the lender. *Id.* ¶¶ 61-62. We affirmed, explaining that although the record did not establish that the defendant uploaded the false loan application himself, there was no question that he ultimately intended the loan application to be completed and transmitted to the lender for approval; particularly, there was no purpose to completing the loan application other than to submit it for approval and obtain the lender's funds. *Id.* ¶ 63. Thus, the circumstantial evidence supported the defendant's conviction for forgery by delivery beyond a reasonable doubt. *Id.*

¶ 32    The same logic applies here. Although the evidence does not directly establish that defendant personally delivered the warranty deed to the recorder's office or any particular party,

the evidence shows she intended for the Wayside property to be conveyed to K&A Properties because that had to occur in order for defendant to receive her commission from K&A Properties' sale of the property. Moreover, Milutinovic could not have subsequently deeded the property from K&A Properties to Coast to Coast if she did not have the original warranty deed conveying the property from Wayside to K&A Properties, which defendant originally procured. Thus, the State established defendant's delivery of the warranty deed beyond a reasonable doubt.

¶ 33    Defendant notes that she did not have exclusive possession of the warranty deed as of June 29, 2012, because Goldberg had a copy at their meeting on that date, and from that concludes she "gave up control of the warranty deed sometime between January 30 and June 29, 2012." The fact that Goldberg had a copy of the warranty deed does not disprove that defendant delivered the warranty deed to another party or the recorder's office. The trier of fact is not required to search out every hypothesis of innocence and elevate it to the level of reasonable doubt. *People v. Moore*, 358 Ill. App. 3d 683, 688 (2005) (citing *People v. Gilliam*, 172 Ill. 2d 484, 515-16 (1996)).

¶ 34    Defendant also contends that because she released K&A Properties from its agreement with her and would have received her "commission" by September 5, 2012, she had no reason to record the deed after that date. The State, however, did not have to prove defendant's motive, but only that she delivered the warranty deed to another party. 720 ILCS 5/17-3(a)(2) (West 2012). Moreover, the trier of fact need not accept the defendant's version of events among competing versions. *People v. Ortiz*, 196 Ill. 2d 236, 267 (2001). Viewing the evidence in the light most favorable to the State, we conclude a rational trier of fact could have found defendant delivered the warranty deed within the meaning of section 17-3(a)(2) of the Code. See *Hagan*, 145 Ill. 2d at 301.

¶ 35    We next address defendant's argument that the State failed to prove her intent to defraud beyond a reasonable doubt.

¶ 36    Acting with intent to defraud means acting knowingly, "with the specific intent to deceive or cheat, for the purpose of causing financial loss to another or bringing some financial gain to oneself, regardless of whether any person was actually defrauded or deceived." 720 ILCS 5/17-0.5 (West 2012); *People v. Lawson*, 2015 IL App (2d) 140604, ¶ 27. The intent to defraud "includes an intent to cause another to assume, create, transfer, alter, or terminate any right, obligation, or power with reference to any person or property." 720 ILCS 5/17-0.5 (West 2012). Intent to defraud " 'may be inferred from the circumstances of the transaction and, if the forged document is delivered, then the intent to defraud will be presumed.' " *Lawson*, 2015 IL App (2d) 140604, ¶ 28 (quoting *People v. Hunter*, 331 Ill. App. 3d 1017, 1026 (2002)).

¶ 37    As explained above, the evidence established beyond a reasonable doubt that defendant delivered the false warranty deed. Based on that conduct, the trial court could properly infer defendant intended to defraud. *Id.* Further, a rational trier of fact could have concluded that defendant delivered the false warranty deed for the purpose of "bringing some financial gain to [her]self." See 720 ILCS 5/17-0.5 (West 2012). Defendant executed an agreement with K&A Properties that when K&A Properties sold the Wayside property to a third party, defendant would receive half the sale proceeds plus two vehicles, including a Rolls Royce, at half their market value. A rational trier of fact could conclude that, in order for that sale to occur and for defendant to receive her "commission," defendant obtained the warranty deed transferring the Wayside property to K&A Properties and caused it to be delivered to Milutinovic.

¶ 38 Moreover, the evidence established that defendant knew that she was involved in a fraudulent real estate transaction by June 29, 2012, when Goldberg told her that Wayside had not been reinstated properly and the warranty deed was invalid. The fact that the transaction between K&A Properties and Coast to Coast occurred after that meeting, on or about September 5, 2012, and the recording of the false warranty deed happened on November 29, 2012, is further evidence of defendant's knowing participation in a deceptive real estate scheme. *See* 720 ILCS 5/17-0.5 (West 2012). Indeed, the trier of fact could have reasonably found that defendant's intent to defraud existed during her meetings with Fleming in January 2012, given that defendant sought out Fleming and brought her a number of documents to sign, including the warranty deed conveying the Wayside property to K&A Properties and the related real estate sale contract. The State's evidence, therefore, established defendant's intent to defraud beyond a reasonable doubt, and supported her conviction for forgery by delivery.

¶ 39 Defendant argues that "[t]he State *** was required to show [defendant] had an intent to defraud when the warranty deed was 'made,' which occurred on January 30, 2012, when Fleming signed the document to transfer property from Wayside to K&A." Defendant focuses on January 30, 2012, because she claims she believed Fleming to be one of Wayside's directors at that time, based on the 2007 corporate report that listed Fleming as a director of Wayside. Essentially, defendant argues that, because she believed Fleming to be a director of Wayside with authority to transfer its property when she had Fleming sign the warranty deed, she had no intent to defraud.

¶ 40 We disagree. First, to reach the conclusion defendant advances, we would have to draw inferences in her favor and accept the most innocent explanation possible, which is contrary to the law. *Collins*, 106 Ill. 2d at 261; *Wheeler*, 226 Ill. 2d at 117. Second, this argument conflates two

different types of forgery under section 17-3 of the Code. The *making* of a false document under section 17-3(a)(1) and the *delivery* of a false document under section 17-3(a)(2) are different acts that constitute different crimes. 720 ILCS 5/17-3(a)(1), (2) (West 2012); *Brown*, 2013 IL 114196, ¶ 38; *People v. Horrell*, 381 Ill. App. 3d 571, 574 (2008). "The State must establish that a defendant had the intent to defraud by making or altering, possessing with intent to deliver, or issuing or delivering any document apparently capable of defrauding another." *Brown*, 2013 IL 114196, ¶ 38. "By use of the disjunctive 'or,' the forgery statute recognizes that these acts can be committed separately." *Id.*

¶ 41    The State did not proceed under section 17-3(a)(1) of the Code for the creation of the warranty deed on January 30, 2012. It only proceeded under section 17-3(a)(2) of the Code for delivery of the warranty deed after it was created. Thus, the issue of defendant's intent to defraud was not limited to the date the warranty deed was created. Even if we were to accept defendant's contention that she honestly believed Fleming to be one of Wayside's directors when the warranty deed was created, the State's proof of her intent to defraud thereafter, *i.e.*, at the time of delivery, was sufficient to support her conviction. As explained above, after defendant obtained the warranty deed from Fleming, law enforcement informed defendant the warranty deed was invalid, but nonetheless, K&A Properties sold the Wayside property, which according to the memorandum of agreement, entitled defendant to her "commission." On September 5, 2012, defendant signed a document stating that K&A Properties' obligations to defendant under the memorandum of agreement were fully satisfied. From this evidence, a rational trier of fact could have concluded beyond a reasonable doubt that defendant had the requisite intent to defraud to support her conviction for forgery by delivery.

¶ 42     For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 43     Affirmed.